COMMONWEALTH vs. DANIEL J. PLEASANT.

Norfolk.  May 6, 1974. — August 1, 1974.

Present: TAURO, C.J., REARDON, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Evidence,* Relevancy and materiality, Hearsay, Common criminal enterprise.  *Practice, Criminal,* Deliberation of jury, Charge to jury.

At a trial for murder by shooting, testimony of a witness that she told the defendant that she had heard that he and his brother had killed the victim was prejudicial hearsay and its admission constituted reversible error; the testimony could not be considered as an admission where the defendant's response was an explicit denial; it was not admissible in the circumstances to show knowledge; and it was separable from an accompanying statement by the witness to "come and get this gun" to which the defendant responded "Okay. Okay." [102-103]

Testimony of a witness at a murder trial that the defendant's brother had said in the absence of the defendant that he, the brother, was going to "get" the victim was inadmissible hearsay; the evidence did not justify its admission as a statement of a joint venturer made during the pendency of a coöperative criminal effort and in furtherance of its goal. [103]

While the bulk of a supplemental charge to the jury in a murder case after they had reported inability to reach a unanimous decision was within the bounds of the charge in *Commonwealth* v. *Tuey,* 8 Cush. 1 (1851), additional statements, "It's a tremendous expense to the county, to the commonwealth and to the parties to try a case a second time. And, furthermore, its boring. It's like seeing a movie the second time," were inappropriate and potentially prejudicial. [104-105]

INDICTMENT found and returned in the Superior Court on January 8, 1973.

The case was tried before *Brogna,* J.

*Joseph Sax* for the defendant.

*John P. Connors, Jr.,* Assistant District Attorney (*Rich-*

*ard G. Hoffman,* Assistant District Attorney, with him) for the Commonwealth.

HENNESSEY, J.   The defendant was tried on an indictment charging murder and convicted after a trial with jury of murder in the second degree. He brings this appeal under G. L. c. 278, §§ 33A-33G. For the reasons given below we reverse the conviction and remand the case to the Superior Court for a new trial.

While the defendant raises numerous assignments of error, in light of our conclusion they need not all be considered. We first discuss the facts in so far as they are relevant to this opinion.

There was evidence that the defendant's brother, James Harris Pleasant, had for a few months before the crime been closely associated with a woman named Monet, an "ex girl friend" of the victim, by whom she had had a child. Monet's middle name is Joyce. Monet testified that James had argued with the victim around Thanksgiving of 1972 and said he was going to "get" the victim. At that time the defendant was not present; the witness testified that she had never seen the defendant with the victim prior to the night of the crime. On the evening of December 22, 1972, the defendant and his brother were at Monet's house from approximately 7 P.M. During the evening the victim called and inquired about his baby. In his brother's presence James commented, presumably referring to the victim, "I am going to kill that . . .." The brothers then left; when they returned about a half-hour later the defendant was carrying a shotgun. At some point the gun went off and the brothers were asked to leave by one Gwendolyn Williams, a cousin who also lived in the building. They met the victim as they left; James was heard to say, "This is the guy that once threatened my life"; there was a scuffle; the victim was heard to say, "Joyce, please don't let him kill me"; the defendant was observed pointing a shotgun at the victim. Later the same evening the victim's body was found some distance away in a recreation area, dead of shotgun wounds.

One Clara Mathis testified that later the same evening (at roughly the same time the body was found) the defendant and his brother came to her house and asked to leave a green bag. After they left, the witness opened the bag and found it to contain a sawed-off shotgun. She testified, over the defendant's objection and exception, that she called the defendant the following day and told him, "I heard that you and James Harris killed . . . [the victim]" and "come and get this gun." The defendant reportedly replied, "I didn't do anything," but when pressed to "come and get this gun," responded, "Okay. Okay."

The defendant testified that when he arrived at the apartment on December 22, 1972, his brother and the victim were already there and that when they left he gave the two a ride to a bar. He denied ever owning a shotgun or being present when the victim was shot. He admitted driving his brother to Mathis's house where a bag was left but denied any knowledge of what was in it. In answer to questions on cross-examination, and subject to objections and exceptions of defence counsel, the defendant admitted Mathis's subsequent telephone call and that she reported having heard that he and his brother killed the victim.

1. The defendant assigns as error the admission of the hearsay testimony of the witness Mathis that she told the defendant that she had heard that he and his brother had killed the victim. There was no valid basis for the admission of this testimony. Further, it was highly prejudicial. It could not be considered an admission as the defendant's response was an explicit denial. Cf. *Commonwealth* v. *Boris,* 317 Mass. 309, 317 (1944).

The Commonwealth contends that the testimony was admissible, not to prove the truth of the matter stated but to show the defendant's "knowledge of the statements made therein," citing *Commonwealth* v. *Monahan,* 349 Mass. 139, 168 (1965). That case is, however, readily distinguishable from the instant case. In the *Monahan* case the conversation at issue was important because it demonstrated that the defendant, who was charged with larceny

and conspiracy to commit larceny from the Massachusetts Parking Authority of which he was a member, was " '. . . on notice that at least one bill from . . . [a codefendant], for which he had voted approval . . ., contained a false statement.' " His knowledge was thus directly relevant to his guilt or innocence. Here, on the contrary, there was no significance to the defendant's knowledge of what the witness had "heard" about his involvement in the crime. If the Commonwealth argues for admissibility based on the fact that the statement was made in conjunction with a request to "come and get this gun,"[1] the simple answer is that the two statements are entirely separable, the one being admissible and the other inadmissible hearsay prejudicial to the defendant. Its admission constituted reversible error. *Commonwealth* v. *Duff,* 245 Mass. 81, 85 (1923).

2. The defendant also assigns as error the admission of evidence of his brother's threat, made in his absence around Thanksgiving, to "get" the victim. Although, as will be seen below, we have determined that the admission of this evidence was harmless error, we discuss its admissibility here because of the possibility that the evidence may be proffered once more at a retrial of the case.

The Commonwealth argues that such hearsay is admissible where proof exists of a joint criminal endeavor. It is true that "where there is proof . . . that two or more persons are engaged in a common criminal enterprise, the acts and declarations of one, during the enterprise and in furtherance of it, affect all." *Commonwealth* v. *Chapman,* 345

---

[1] The witness Mathis testified over defendant's objections and exceptions as follows on direct examination: "Q. Tell us what you said and tell us what he said. A. I said to him, 'Bubba, I heard that you and James Harris killed . . . [the victim].' I said, 'Come and get this gun.' He said, 'I didn't do anything. I didn't do anything.' I said, 'Bubba, come and get this gun.' Q. And what did he say? A. He said, 'Okay. Okay.' "

The defendant was asked on cross-examination: "Q. Did she tell you on the phone, 'I heard that you and James Harris killed . . . [the victim]?' "

After a motion for a mistrial and an objection and exception the defendant answered, "Yes, she said it."

During this exchange there was no reference to any request to "come and get this gun." The defendant earlier had testified that "[s]he told me to come over and pick up a bag that my brother had left there."

Mass. 251, 255 (1962). *Commonwealth* v. *French,* 357 Mass. 356, 381 (1970). This standard is closely comparable to that for vicarious liability among members of a conspiracy. *Commonwealth* v. *Kiernan,* 348 Mass. 29, 55 (1964). *Commonwealth* v. *French,* 357 Mass. 356, 375-376 (1970). While we need not consider the extent, if any, to which these standards may differ, we note that they contain similar limitations. Not all statements of coconspirators or joint criminal venturers are admissible against an absent defendant. *Commonwealth* v. *White,* 208 Mass. 202, 204 (1911). *Commonwealth* v. *Carita,* 356 Mass. 132, 138-139 (1969). Cf. *Bruton* v. *United States,* 391 U. S. 123 (1968). They must be made both during the pendency of the coöperative effort and in furtherance of its goal. *Commonwealth* v. *Shea,* 323 Mass. 406, 414 (1948).

The statement in question here fulfils neither of these requisites. It was either a statement of intent or perhaps a meaningless exclamation, but it was hardly an attempt to enlist aid in any plan and thus in its context cannot be considered to have been made in furtherance of a criminal goal. Furthermore, there was no evidence that at the time it was made the defendant was even aware of the existence of the ultimate victim, much less that he had joined his brother in a homicide attempt. On the evidence before us it cannot be claimed that any common enterprise of the two brothers was proved to be in effect before December 22, 1972.

While the evidence of the threat was thus clearly inadmissible we do not hold that it was reversible error. On the contrary, it was clearly harmless in light of the same witness's subsequent testimony, without objection, of a far stronger and more specific threat made by James Pleasant in the defendant's presence on the very night of the crime.

3. After the jury had been deliberating for a number of hours they returned with a question for the judge on the need for unanimity. It was answered and the jury again retired to deliberate. Only a few minutes thereafter the foreman reported to the judge that "[w]e are unable to

reach a unanimous decision." At this point the judge gave a supplementary charge based largely on *Commonwealth* v. *Tuey,* 8 Cush. 1 (1851). The jury then reached a guilty verdict in less than one hour. The defendant saved an exception and assigns this charge as error.

We have in numerous cases in recent years upheld the *Tuey* charge as an appropriate and "reasonable method of inviting a jury's attention . . . to considerations which, as reasonable men, they should take into account, without surrendering positions which conscience and careful judgment have led them to adopt." *Commonwealth* v. *Rollins,* 354 Mass. 630, 638 (1968). See, e.g., *Commonwealth* v. *Connearney,* 359 Mass. 200, 202-205 (1971); *Commonwealth* v. *Moore,* 359 Mass. 509, 516 (1971); *Commonwealth* v. *Brunelle,* 361 Mass. 6, 12 (1972); *Commonwealth* v. *Richardson,* 361 Mass. 661, 663-664 (1972). Cf. *Commonwealth* v. *French,* 357 Mass. 356, 405 (1970).

However, we have also noted its potential in particular circumstances to result in undue coercion, and in our most recent reconsideration of the charge, while stating that "we do not find enough in the circumstances of its use here to render it coercive to the point of calling for reversal of the judgments," we recommended certain changes in the future use of supplementary charges to juries apparently experiencing difficulty in reaching unanimity. *Commonwealth* v. *Rodriquez,* 364 Mass. 87, 97-103 (1973).

The precise language used by the judge in this case demonstrates a greater possibility of coercion than was present in the circumstances of the *Rodriquez* case. While the bulk of the supplementary charge was within the approved bounds of the *Tuey* charge, there were additional elements that we have not previously considered. The judge stated: "It's a tremendous expense to the county, to the commonwealth and to the parties to try a case a second time. And, furthermore, it's boring. It's like seeing a movie the second time." As we have reversed the conviction on other grounds, we need not consider whether the coercive impact of these statements was sufficient to require rever-

sal in the absence of other error. We nevertheless note our disapproval of the language. It is inappropriate and potentially prejudicial.

*Judgment reversed.*
*Verdict set aside.*