COMMONWEALTH *vs.* JIMMIE L. WAMPLER, JR.

Bristol.   October 6, 1975. — November 26, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & WILKINS, JJ.

*Evidence*, Relevancy and materiality, Hearsay, Common criminal enterprise, Of state of mind.

At the trial for the murder by stabbing of a youth who had broken the nose of the defendant's brother in a school fight, testimony of a nurse that on the day of the fight the brother said he would kill the victim was helpful to an understanding of the brother's statements shortly before the murder on the next day: "I know where he is," and, "Let's go get him," to which the defendant immediately responded by putting a knife in his trousers and leaving with others to chase the victim; any error in admission of the nurse's testimony was harmless in view of the defendant's exclamations at the time of the murder.   [122-124]

At a murder trial, where the defendant argued that evidence showed he was drunk at the time of the crime and did not have the premeditation required for murder in the first degree, there was no error in the admission of testimony that at a police station in which the defendant made a number of statements he "definitely was not drunk" nearly four hours after the crime.   [124]

INDICTMENT found and returned in the Superior Court on June 6, 1972.

The case was tried before *Taveira, J.*

*James M. Pool* for the defendant.

*Earl M. Seligman,* Assistant District Attorney, for the Commonwealth.

BRAUCHER, J.   The defendant appeals from a conviction of murder in the first degree.   He assigns two errors in the admission of evidence:   a declaration of his brother made the day before the crime, and testimony of a police officer as to the defendant's sobriety four hours after the crime.   We affirm the conviction.

We summarize the evidence on behalf of the Commonwealth. On Thursday, April 13, 1972, the defendant's brother, sixteen years old, was treated at a hospital for a broken nose resulting from a fight in school earlier that morning. About 9:00 P.M. the next day, Friday, the defendant and several others were drinking beer and listening to records in a girl's apartment. The brother entered the apartment and said he knew where Cook, the boy who had broken his nose, was. The defendant, his brother and two other young men left and went to a show at the high school. The defendant and one of the others took knives from a kitchen drawer with them. Soon afterwards the four young men were chasing Cook down streets near the high school. Cook entered the front seat of a taxicab on the right side. The defendant broke a vent window on the left side, opened the door and climbed across the driver with a knife in his hand. He unlocked the right front door, and two others dragged Cook out of the taxicab. Cook, sixteen years old, was stabbed and died as a result. Later the defendant returned to the apartment and said, "I think we — I killed him." Still later he said, "I even got blood on my hands from that pig."

No evidence was offered on behalf of the defendant.

1. *The brother's declaration.* Over the defendant's objection, the judge admitted in evidence testimony of a nurse at the hospital that on the day before the crime the defendant's brother, in the presence of his sister, said that he would kill the boy who had broken his nose. The judge ruled that the jury could infer that there was a conspiracy; later he instructed them that they should not consider the statement as evidence against the defendant unless they found that there was a combination, confederation or conspiracy between the parties.

The exception to the hearsay rule for statements of coconspirators is limited to statements made "during the pendency of the cooperative effort and in furtherance of its goal." *Commonwealth* v. *Pleasant,* 366 Mass. 100,

104 (1974).   Those requirements are not met here.
There was no showing that a common enterprise was in
effect the day before the crime, or that the brother was
attempting to enlist the aid of the nurse or sister in such
an enterprise.   There was no basis for holding the de-
fendant to vicarious responsibility for the brother's state-
ment.

But the declaration in the present case was not hearsay
in the sense of a statement offered in evidence to prove
the truth of a fact remembered or believed; it was rather
a declaration of intention, offered to prove the declarant's
state of mind, then and later.   Such a statement is not
excluded by the hearsay rule; either it is not hearsay, or
it is within an exception to the hearsay rule.   See *Com-
monwealth* v. *DelValle*, 351 Mass. 489, 491-492 (1966),
and cases cited; Fed. R. Evidence 801 (a), (c), 803 (3);
McCormick, Evidence § 294 (2d ed. 1972).   In the
*Pleasant* case, the declaration was made about a month
before any common enterprise, and we did not consider
its admissibility otherwise than as a vicarious admission.
"The date when a conspiracy is alleged to have begun is
not, in effect, a wall behind which the court and jury
may never look for the purpose of discovering facts that
have a bearing upon the fact of the conspiracy itself."
*Commonwealth* v. *Beal*, 314 Mass. 210, 227 (1943).
The brother's statement the day before could help the
jury to understand his statements in the apartment just
before the crime:  "I know where he is," and, "Let's go
get him."   Those statements were made in the defendant's
presence, and the defendant responded by putting a knife
in his trousers and leaving with three others.   Then, if
not before, the defendant joined a common enterprise,
and he adopted his brother's intention.   Cf. *Common-
wealth* v. *Lamattina*, 2 Mass. App. Ct. 203, 212-213
(1974).   This principle is not limited to prosecutions for
conspiracy.   Cf. *Commonwealth* v. *Pleasant*, 366 Mass.
100, 103-104 (1974); *Commonwealth* v. *Chapman*, 345
Mass. 251, 255 (1962).

Thus we think the brother's declaration was not too remote and was admissible. In any event, however, any error on the point was clearly harmless. *Commonwealth* v. *Pleasant*, 366 Mass. at 104. The nurse testified that she understood the declaration to mean that the brother "said he was going to get even . . . ." It meant no more than the brother's subsequent statement, "Let's go get him," which was admitted without objection. Moreover, there was testimony that the defendant said to the victim, "I'm going to kill you," just before he broke into the taxicab, and that he said, "Let me at him," as he climbed across the driver with a knife in his hand.

2. *Sobriety.* Over objection, a detective was permitted to testify that at the police station, nearly four hours after the crime, the defendant "may have had a couple [of] drinks, but he definitely was not drunk." The defendant argues that other evidence showed that he was drunk at the time of the crime and could have been found incapable of the premeditation required for murder in the first degree. The detective's testimony was immaterial to that issue, the defendant argues, but it may have improperly influenced the jury.

We reject this contention. The detective also testified that the defendant was warned of his constitutional rights and thereafter made a number of statements about the crime. Whether or not he was sober had an important bearing on whether those statements were voluntary. *Commonwealth* v. *Hosey*, 368 Mass. 571, 577 (1975).

3. *Section 33E.* On appraisal of the whole record, we find no occasion to grant relief under G. L. c. 278, § 33E.

*Judgment affirmed.*