**Cleophus BROWN, Petitioner,**

v.

**Thomas R. ISRAEL, Respondent.**

**No. 77–C–506.**

United States District Court,
E. D. Wisconsin.

May 17, 1978.

Charles B. Vetzner, Madison, Wis., for petitioner.

Bronson C. LaFollette, Wis. Atty. Gen. by William L. Gansner, Asst. Atty. Gen., Madison, Wis., for respondent.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

This is an action for a writ of habeas corpus. On August 22, 1974, the petitioner was convicted in state court of first degree murder and attempted first degree murder in violation of the Wisconsin statutes. On appeal to the Wisconsin supreme court, the judgment of conviction was affirmed by an equally divided court. *Brown v. State,* 73 Wis.2d 351, 243 N.W.2d 519 (1976). The petitioner claims that he was convicted and is confined in violation of the due process clause of the Fourteenth Amendment to the United States Constitution. The petition will be granted.

According to the state's testimony at trial, the petitioner, Cleophus Brown, arrived at the apartment of Gloria Mae Nabors, his estranged "common law" wife and mother of his two sons, and found her in bed with Fred Adams, her new boyfriend. With a gun he had brought with him, Mr. Brown fired twice in the direction of Ms. Nabors, but the gun misfired the first time, and the second shot missed her. Mr. Brown fired the gun twice more, killing Mr. Adams.

At trial on the first degree murder and attempted first degree murder charges, the petitioner sought to establish that he was not guilty of a greater degree of homicide than manslaughter. He attempted to testify that he was unaware that Ms. Nabors had a new boyfriend and that at the time of the shooting Mr. Brown had the gun in his possession by reason of circumstances which were unrelated to his visit to Ms. Nabors' apartment. Under Mr. Brown's version of the facts, he was suddenly confronted with his lover's infidelity and "blew up" uncontrollably—a classic paradigm of manslaughter.

The state attempted to establish that the petitioner was guilty of first degree murder with certain evidence of premeditation, including a prior confrontation with Mr. Adams after which the petitioner allegedly made a threat to kill Mr. Adams.

The alleged constitutional error arises from the trial judge's exclusion of portions of the petitioner's testimony and the court's refusal to instruct the jury on manslaughter; only instructions on first and second degree murder were given. Under Wisconsin law, a conviction for first degree murder requires proof of a specific intent to kill. *Holmes v. State,* 63 Wis.2d 389, 217 N.W.2d 657 (1974). A conviction for second degree murder requires "conduct imminently dangerous to another and evincing a depraved mind, regardless of human life . . . ." § 940.02, Wis.Stats. Manslaughter is defined as causing the death of another "without intent to kill and while in the heat of passion." § 940.05(1), Wis.Stats.

In an effort to disprove the charge of first degree murder, the petitioner attempted to testify that he lacked the specific intent to kill Ms. Nabors or Mr. Adams at the time of the offense. The trial court sustained numerous objections to this line of testimony, asserting that a defendant's own subjective testimony concerning the intent behind his acts is inadmissible. On this reasoning, the trial court sustained objections to the following questions posed to the petitioner by his counsel:

"Mr. Brown, would you describe your feeling at the time when you saw them [Nabors and Adams] there [in bed]?" (T. 507)

"Did you shoot at Gloria Nabors while you were in that room?" (T. 522)

"Did you intend to kill Gloria Nabors when you were in that room?" (T. 522).

On cross examination, the petitioner testified that he did not recall any of the details of the actual shooting.

On redirect examination, the petitioner's trial counsel again attempted to put questions to Mr. Brown relative to his intent:

Q. Sir, when you went to Gloria Nabors' house was it your intention to kill anyone?

MR. SCHIRO [the prosecuting attorney]: Objection to the form of the question.

THE COURT: Sustained as to what he intended.

MR. SCHIRO: My basis was leading and suggestive.

COURT: It was leading.

Q. Sir, do you know what happened after you entered the room?

MR. SCHIRO: I am going to object as to being vague.

COURT: That is vague. Sustained.

Q. Can you explain your conduct after opening the door and entering the room?

COURT: On July 15th?

MR. FLESSAS [Mr. Brown's trial counsel]: Yes, on that date.

A. I just blew up. I don't remember anything, you know, seeing another man in the bed.

MR. SCHIRO: Objection, self-serving.

COURT: Sustained, and that portion of the answer will be struck, "seeing another man in the bed." The jury is instructed to disregard it.

The petitioner argues that the judge's exclusion of the proffered testimony concerning his intent at the time of the offense violated his right to present a defense guaranteed by the Sixth and Fourteenth Amendments, citing *Chambers v. Mississip-*

*pi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), and *Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967).

Some of the "intent" questions put to Mr. Brown were not artfully framed, and objections were properly sustained. However, it is clear, too, that on several occasions the court barred Mr. Brown from answering properly framed questions. The respondent concedes that the trial court's rulings were erroneous under both state law and the United States Constitution but argues that they amount to harmless constitutional error that did not contribute to the verdict. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

The standard for determining whether constitutional error is harmless is set forth in *Chapman, supra,* 386 U.S. at 24, 87 S.Ct. at 828:

"[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."

In addition, the Court stated that the burden is on the state "to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* I turn now to the question whether the respondent has met his burden.

For his first argument, the respondent suggests that the effect of the trial court's error in excluding the petitioner's testimony did not completely preclude the petitioner's defense since the trial judge was nevertheless able to determine, sua sponte, that the evidence justified giving an instruction on second degree murder, a lesser-included offense of first degree murder with a penalty greater than manslaughter.

I am not persuaded that the trial judge's determination to give a second degree murder instruction demonstrates in any respect that the constitutional error was harmless. The petitioner's principal theory of defense at trial was that he acted in the heat of passion on the sudden provocation of seeing Ms. Nabors in bed with another man. The trial judge's rulings excluded the petition-

er's testimony offered on this theory, and the refusal to instruct the jury on manslaughter precluded jury consideration of the defense. If the petitioner's objective at trial was to secure a verdict of second degree murder rather than manslaughter, the respondent's argument would have merit. However, in view of the preclusive effect the trial judge's error had on the petitioner's manslaughter defense, the instruction on second degree murder did not render the error harmless.

The respondent's next argument is that the evidence of the intentional nature of the killing was compelling. He points to the state's evidence that Mr. Brown had threatened to kill Mr. Adams at an earlier confrontation; that Mr. Brown knew that Mr. Adams was in Ms. Nabors' apartment on the day of the crime; that Mr. Brown came to Ms. Nabors' apartment with a loaded gun; and that the gunshots killed Mr. Adams and only narrowly missed Ms. Nabors.

The petitioner responds that he refuted at trial the following evidence offered by the state: (1) that he made a prior threat to kill Mr. Adams; (2) that he knew Mr. Adams was at the apartment on the day of the crime; and (3) that he deliberately brought a loaded gun to the apartment. The petitioner candidly admits that there was evidence of first degree murder, but argues that the evidence was not so overwhelming that Mr. Brown's testimony, if admitted could not have altered the verdict. The petitioner stresses that the excluded evidence was not merely corroborative of other testimony but rather was the only testimony offered in support of his manslaughter theory.

The strength of the state's evidence does not, in my judgment, demonstrate that the error was harmless beyond a reasonable doubt. The issue at trial was a narrow one—whether the petitioner acted with specific intent or in the heat of passion. Necessarily, the state's evidence on this issue was circumstantial since obviously a state of mind cannot be documented or observed. Mr. Brown's testimony on the subject of his state of mind at the time of the offense, while neither objective nor uninterested, was certainly evidence relevant to the state of mind issue and was essential to the presentation of a heat of passion defense. I am unable to conclude that Mr. Brown's testimony, if admitted, might not have altered the verdict.

The respondent also argues that the petitioner was permitted during his redirect examination to testify about all the matter which had previously been excluded pursuant to the trial court's erroneous rulings. The respondent supports this argument with scattered excerpts from Mr. Brown's direct, cross and redirect examination. However, my review of the testimony persuades me that Mr. Brown was denied a fair opportunity to present his heat of passion provocation defense.

On Mr. Brown's direct and redirect examination, the state's objections to questions regarding Mr. Brown's intent were sustained. Furthermore, Mr. Brown's testimony as to the cause or provocation for his acts—seeing another man in bed with Ms. Nabors—was stricken from the record upon the state's objection. (T. 592).

 In conclusion, I find that a different verdict might have been returned by the jury had the petitioner been able fairly to place his defense before the jury. Accordingly, I reject the respondent's argument that the trial court's constitutional error was harmless.

The petitioner also argues that the trial judge's exclusion of the proffered testimony concerning his intent at the time of the offense violated the due process requirements of the Fourteenth Amendment because it created a conclusive presumption that Mr. Brown had the intent to commit first degree murder, thereby relieving the prosecution of its burden to prove all essential elements of the crime of first degree murder. *Hughes v. Mathews,* 440 F.Supp. 1272 (E.D.Wis.1977). *Hughes* was recently affirmed by the court of appeals for this circuit. (Case no. 77–2010, May 12, 1978). The petitioner also argues that he was deprived of due process because of the trial

court's failure to instruct the jury on manslaughter.

In view of my determination that the petitioner is entitled to relief because he was deprived of his right to present a defense under the Sixth and Fourteenth Amendments, I need not consider the petitioner's alternative arguments.

Therefore, IT IS ORDERED that the petition for a writ of habeas corpus be and hereby is granted, unless the respondent notifies the petitioner and this court within 60 days of the date of this order of the state's intention to retry the petitioner. In the latter event, the issuance of a writ will be permanently stayed provided such trial is actually commenced within 90 days after the service and filing of such notice with the clerk of this court.