## COMMONWEALTH vs. JESUS CALDRON.

Suffolk. November 4, 1980. — March 4, 1981.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, WILKINS, & ABRAMS, JJ.

*Evidence,* Intent, Hearsay, State of mind, Prior conviction. *Error,* Harmless. *Practice, Criminal,* Impeachment by prior conviction.

At the trial of a defendant on charges of robbery and assault and battery with a dangerous weapon, the judge erred in excluding questions to elicit testimony by the defendant as to his intent at the time of the commission of the alleged criminal acts. [89-90]

At the trial of a defendant on charges of robbery and assault and battery with a dangerous weapon, the judge erred in excluding testimony about the defendant's conversation with a coventurer immediately following the commission of the alleged criminal acts where the testimony would likely have been either evidence from which the defendant's mental state at the time of the utterance could have been inferred or a direct statement descriptive of that state. [90-91]

At the trial of a defendant on charges of robbery and assault and battery with a dangerous weapon, the erroneous exclusion of evidence pertaining to the defendant's intent at the time of the alleged criminal acts was not harmless in the circumstances, notwithstanding the admission of some testimony by the defendant bearing inferentially on his intent. [92-94]

The denial of a defendant's motion to exclude the records of his prior convictions as impeachment evidence was not subject to appellate review. [94]

INDICTMENTS found and returned in the Superior Court on September 13, 1976.

The cases were tried before *Lappin,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Ellen A. Howard* for the defendant.

*Charles M. Campo,* Assistant District Attorney, for the Commonwealth.

KAPLAN, J.  We accepted for direct review, on our own motion, the appeal of Jesus Caldron from convictions of robbery (G. L. c. 265, § 19) and of assault and battery with a dangerous weapon (G. L. c. 265, § 15A), on which he received sentences of eighteen years and nine years, respectively, in M.C.I. Concord, to be served concurrently.  He raises issues regarding (1) the exclusion of questions to elicit testimony by him as to his intent at the time of the commission of the alleged criminal acts, and (2) the refusal to exclude evidence of his prior convictions of crime.  We hold for the defendant on the first issue, and accordingly reverse the convictions, the cases to stand for retrial.  We say only a word about the second issue which may recur at retrial.

At the trial to a jury in December, 1979, the Commonwealth called two witnesses, the victim Paul F. Sullivan and Officer A. James Shula of the Boston police.  The victim testified on direct that on July 20, 1976, about 11:10 P.M., he was approached by two men near the corner of Essex and Kingston streets, Boston, as he was walking toward his parked car.  One of the men was the defendant Jesus Caldron, the other was Joseph Pope (as later identified).  No one else was on the street.  The lighting was poor.  Pope asked the victim for the time, then said, "This is an old fashioned robbery."  According to the victim, the defendant hit him in the face and grabbed his arms.  Pope went through the victim's pockets and removed a fisherman's knife and a wallet (containing, the victim believed, four one dollar bills); he also took a wrist watch from the victim.  The victim managed to free an arm, whereupon Pope stabbed him in his left side with the fisherman's knife.  The defendant and Pope then fled.

Further testifying, the victim said he ran to his car nearby to fetch a club he kept there, and pursued the assailants.  During the chase he met Shula and Shula's partner patrolling in a cruiser.  The officers took the victim aboard, rode for two blocks, and spotted the defendant and Pope on Tyler Street.  Five to fifteen minutes had passed since the robbery.  As the victim watched, the officer apprehended

and searched the two men, finding the victim's knife in the process. Ten stitches were needed later to close the victim's stab wound.

Officer Shula's testimony added that the victim's knife was found in Pope's pocket and bore fresh blood. Pope had two one dollar bills in his pocket; the defendant had four one dollar bills.

This was the testimony when the prosecution rested, apart from what was elicited on cross-examination of the victim, which we mention below.

The defense called only the defendant. He said he had met Pope about two weeks before the robbery through their attendance at the Center for Attitude Change in Boston. They had come to the downtown area to look for Pope's girl friend. Walking down Essex Street, they encountered the victim. Pope suddenly and unexpectedly grabbed the man, began to search his pockets, and removed something that the defendant could not see at the time. Pope told the defendant to hold the victim, but the defendant did not do so; rather he asked Pope what he was doing and tried to pull him off the victim. He might have touched the victim during the struggle but, if he did, it was when he was trying to grab Pope. He did see two dollar bills and something "shiny" in Pope's hands as Pope let go of the victim. Even then the defendant did not realize that there had been a stabbing until he heard about it after the arrest.

To revert to the cross-examination of the victim Sullivan: As noted, the victim maintained on direct that the defendant had hit him in the face and Pope had emptied his pockets and stabbed him while the defendant held his arms. Before the grand jury in August, 1976, he had testified only that "they" had hit him, and that it was the defendant who had gone through his pockets (he was consistent in charging Pope with the stabbing). He conceded that at the grand jury he was "confused" as to what each assailant had done. He conceded further that he had told the defendant's attorney the day before trial that the stabbing occurred during a struggle between Pope and himself, and that the defendant

had stood by without participating. But his direct testimony had the defendant holding his arm during the stabbing.

1. *Exclusion of proffered testimony on intent.* On direct examination of the defendant, counsel sought to ask him whether he intended at any time to rob the victim. The judge excluded the question on the Commonwealth's objection, and exception was taken. At three other places in the direct examination, counsel asked the defendant what he had said to Pope just after the robbery. These questions were likewise excluded on the Commonwealth's objection, and counsel made known his exception to the rulings.[1]

(a) The exclusion of testimony by the defendant describing his own intent was error.[2] See *Commonwealth* v. *Reynolds*, 338 Mass. 130, 134 (1958); *Commonwealth* v. *Woodward*, 102 Mass. 155, 161 (1869); *Commonwealth* v. *Huffman*, 11 Mass. App. Ct. 186, 191 (1981); *Commonwealth* v. *Kraatz*, 2 Mass. App. Ct. 196, 202 (1974). See also *Crawford* v. *United States*, 212 U.S. 183, 202-203 (1909); *Whiting* v. *United States*, 296 F.2d 512, 519 (1st Cir. 1961). Wrongful intent or purpose is an element of the crime of robbery as well as of assault and battery with a dangerous weapon. See G. L. c. 265, § 19, and *Commonwealth* v. *Weiner*, 255 Mass. 506, 509 (1926); *id.*, § 15A, and *Salemme* v. *Commonwealth*, 370 Mass. 421, 424 (1976). See also *Commonwealth* v. *Richards*, 363 Mass. 299, 307-308 (1973) (regarding mental state in relation to criminal joint venture). Indeed the trial judge instructed on the intent ingredient of these crimes. Thus the testimony was relevant, and should have been received, unless there is

---

[1] Counsel did not register exception after the first ruling but did so with respect to the other two.

[2] It would have been better practice for the defendant to make an offer of proof, but that could be dispensed with as there was no doubt what testimony would be given. See *Commonwealth* v. *Smith*, 163 Mass. 411, 429 (1895); K.B. Hughes, Evidence § 214, at 241 (1961); Proposed Mass. R. Evid. 103(a)(2) (July 1980); Fed. R. Evid. 103(a)(2).

some particular rule that excludes. There is none. Wigmore found in some cases an "obscure suggestion" that a party (and sometimes even a witness) was disabled from testifying about his own intent, but he found also that the rejection of this suggestion was "virtually unanimous." 2 J. Wigmore, Evidence § 581, at 840 (Chadbourn rev. 1979). It is not a basis for excluding such testimony that it is self-serving. As L. Hand, J., remarked in *United States* v. *Matot*, 146 F.2d 197, 198 (2d Cir. 1944), in a situation not dissimilar: "The prosecution seeks to defend the exclusion on the theory that the testimony would have been 'self-serving,' and that it was not part of the 'res gestae.' What else but 'self-serving' the testimony of an accused person on his direct examination is likely to be, we find it difficult to understand; and as for 'res gestae,' it is a phrase which has been accountable for so much confusion that it had best be denied any place whatever in legal terminology; if it means anything but an unwillingness to think at all, what it covers cannot be put in less intelligible terms." On the same point, see also *Commonwealth* v. *Fatalo*, 345 Mass. 85, 87 (1962); *State* v. *Abbott*, 36 N.J. 63, 79 (1961) (Weintraub, C.J.).

(b) We consider next the testimony the defendant probably would have given about his conversation with Pope immediately following the robbery. From the defendant's attempted partial answer the first time the question was put (the judge cut him off), it appears he was going to describe an argument he had with Pope. The conversation would likely have been evidence from which the defendant's mental state at the time of the utterance could be inferred; it might have been a direct statement by him descriptive of that state.[3] The Commonwealth seeks to justify the exclusion by reference only to the hearsay rule. So far as the conversation provided inferential or indirect evidence of mental

[3] Again there should preferably have been an offer of proof, but the Commonwealth does not attack on that ground and we proceed on the dual views of the conversation to which the defendant would have testified.

condition, the defendant's testimony about it would not be regarded as hearsay. See *Commonwealth v. Wampler*, 369 Mass. 121, 123 (1975); *Commonwealth v. Ferreira*, 381 Mass. 306, 310 (1980) (citing *Wampler*); W.B. Leach & P.J. Liacos, Massachusetts Evidence 184-187 (4th ed. 1967); McCormick, Evidence § 249, at 590 (Cleary ed. 1972); 4 J. Weinstein & M. Berger, Evidence par. 803(3)[02], at 803-94 to 803-95 (1979). It would be otherwise, as to testimony of a direct statement. See McCormick, Evidence, *supra* at 590. But a distinction between statements bearing "circumstantially," and those bearing directly on mental set is at best thin, for the statements would seem of equal reliability. See McCormick, *supra* § 249, at 590 n.92; 4 J. Weinstein & M. Berger, *supra* at 803-95. We think the distinction, such as it may be, is not significant here. If there was a direct assertion of mental condition, it would nevertheless be admissible under a hearsay exception for declarations of such current states of mind. "Statements of a person as to his present friendliness, hostility, intent, knowledge or other mental condition are admissible to prove such mental condition." W.B. Leach & P.J. Liacos, *supra* at 248. See *Commonwealth v. Ferreira*, *supra* at 310; *Commonwealth v. Wampler*, *supra* at 123; *Commonwealth v. Fiore*, 364 Mass. 819, 824 (1974); *Commonwealth v. Trefethen*, 157 Mass. 180, 188 (1892); Fed. R. Evid. 803(3); Proposed Mass. R. Evid. 803(3) (July 1980). That the statement in this case was uttered a few minutes after the alleged robbery should not render it inadmissible: it was so close in time to the robbery as to be probative of the defendant's intent during that event. See W.B. Leach & P.J. Liacos, *supra* at 248-249; 6 J. Wigmore, Evidence § 1732, at 161-162 (Chadbourn rev. 1976).[4]

---

[4] We have to consider the possibility that the statement was an assertion descriptive of the defendant's state of mind in the past, at the time of the robbery. It would still be admissible. According to the generally received rule, only a declaration of "present" (i.e., current) mental condition is excepted from the hearsay bar, see W.B. Leach & P.J. Liacos, Massachusetts Evidence 248-249 (4th ed. 1967); Fed. R. Evid. 803(3);

(c) As to the exclusion of the question put to the defendant by his counsel asking what was his intent during the episode, the Commonwealth contends that the testimony sought would have been cumulative, and any error in the exclusion therefore harmless. The Commonwealth does not expressly justify on that ground the exclusion of the conversation with Pope, but we may take the contention as extending to that as well. The argument of cumulation is based on a remark by the defendant that "my mind at that time wasn't, you know, to rob him." But this came at the end of a rambling answer and had nowhere near the force of a firm denial by the defendant of a guilty intent. It is pointed out that parts of the defendant's testimony about his conduct furnished some support for his claim that he had no wrongful intent. But this type of evidence was truncated by the exclusion of the post-robbery conversation with Pope, making it harder for the defendant to meet the prosecutor's claim that the fact the defendant fled with Pope and was arrested with him proved them to be coventurers. (Instructive on this point is *People* v. *Redmond,* 169 Cal. Rptr. 253, 256-259 [1980].) Can we say with confidence[5] that,

---

Proposed Mass. R. Evid. 803(3) (July 1980), but the statement here was so near the event that it would qualify as present. See McCormick, Evidence § 294, at 695-696 (1972); J. Weinstein & M. Berger, Evidence par. 803(3)[03], at 803-101 (1979). Compare *Commonwealth* v. *Cantor*, 253 Mass. 509, 512-513 (1925).

Wigmore contends that a statement by a defendant even of past mental condition should be admissible. 6 J. Wigmore, Evidence § 1732, at 161 (Chadbourn rev. 1976).

[5] On the assumption that these errors do not amount to a denial of due process, we may pass over the question whether the standard for "harmless error" should be less rigorous than the "harmless beyond a reasonable doubt" standard reserved for constitutional error (whether established by showing that the error "did not contribute to the verdict obtained," see *Chapman* v. *California*, 386 U.S. 18, 24 [1967], or by pointing to "overwhelming evidence of . . . guilt," see *Milton* v. *Wainwright*, 407 U.S. 371, 373 [1972]). See generally *Commonwealth* v. *Marini*, 375 Mass. 510, 520-521 (1978). We think the errors here were not harmless even under a less rigorous standard. Cf. *Commonwealth* v. *Ferreira*, 381 Mass. 306, 313 n.10 (1980); *Commonwealth* v. *Hanger*, 377 Mass. 503, 511 & n.8 (1979).

had the judge admitted the testimony erroneously excluded, it would have been without material effect on the jury? The evidence received of the defendant's guilt left room for substantial doubt. The night was dark; the occurrence was of brief duration; the reliability of the victim's perceptions was put in question; there were contradictions or uncertainties in the victim's testimony about the defendant's participation.[6]

The question is a close one. Exclusion of testimony by a defendant, in terms, that he had no wrongful intent can be harmless where he was allowed otherwise to testify at length about his frame of mind or knowledge or belief (see *United States* v. *Edwards*, 458 F.2d 875, 884 [5th Cir.], cert. denied sub nom. *Huie* v. *United States*, 409 U.S. 891 [1972]; *People* v. *Storer*, 329 Ill. 536, 540-541 [1928]), or where evidence of the defendant's guilt was overwhelming (see *Rothschild* v. *New York*, 388 F. Supp. 1346, 1348-1349 [S.D.N.Y.], aff'd on other grounds, 525 F.2d 686 [2d Cir. 1975]), or even where the defendant was able to put forth fully evidence from which a lack of criminal intent would be readily inferred (see *United States* v. *Hayes*, 477 F.2d 868, 873-874 [10th Cir. 1973]; *Kimble* v. *Arkansas*, 246 Ark. 407, 414-416 [1969]). The situation here is different, and on balance we think the present case is in line with those where the error in denying a defendant the right to testify flatly as to his intent has been considered material, notwithstanding the admission of some testimony by the defendant bearing inferentially on his intent. See *Haigler* v. *United States*, 172 F.2d 986, 988-989 (10th Cir. 1949); *Cain* v. *State*, 112 Ga. App. 646, 646-647 (1965); *People* v. *Spranger*, 314 Ill. 602, 608-610 (1924); *People* v. *Christen*, 82 Ill. App. 3d 192, 194-196 (1980); *People* v. *Johnson*, 108 Ill. App. 2d 150, 158-160 (1969); *State* v. *Len*, 208 N.J.L.

---

[6] Initially the defendant had plea bargained to plead guilty to the robbery charge. But under questioning by the judge he repeatedly refused to admit that he had intended to rob the victim or that he had participated in the robbery; all he would acknowledge was that he was present when the crime took place. On this basis the judge refused to accept his plea, and the case went to trial. The sentence ultimately imposed, however, did not exceed the one originally agreed, although the prosecutor recommended a stiffer penalty.

439, 441-442 (1932); *People* v. *Levan*, 295 N.Y. 26, 33 (1945) ("We cannot extenuate the error [ruling by the judge to exclude direct question as to defendant's intent] . . . . There was no denial by the defendant, prior to the ruling, of an intent to rob. He did not have to depend upon inferences from the evidence to establish that his intention was not robbery"). The curtailment of evidence through the mistaken exclusion of the conversation with Pope aggravates the case as we have noted.[7]

2. *Prior convictions.* Defense counsel moved before trial to exclude the records of the defendant's prior convictions as impeachment evidence. The motion was denied, and so, evidently anticipating the Commonwealth, counsel led the defendant during direct examination to admit some, though not all, of those convictions.[8] For present purposes we may treat the case as not different from one in which the convictions, over objection, are introduced in the more conventional way on cross-examination of the defendant. As indicated by *Commonwealth* v. *Diaz, ante* 73 (1981), decided this day, the defendant's exception to the judge's denial of his motion is not subject to appellate review. For comments on the handling of the issue upon retrial, we refer to our discussion in *Diaz*.

*Judgments reversed.*

*Verdicts set aside.*

---

[7] The defendant in *Brown* v. *Israel*, 449 F. Supp. 1029 (E.D. Wis. 1978), was convicted of murder of one person and of attempted murder of another after a trial in which he was allowed to introduce some circumstantial evidence bearing on his intent, but was not allowed to testify squarely on that issue. The court held that the exclusion of this testimony denied the defendant his Sixth and Fourteenth Amendment rights to present a defense and was not harmless. The exclusion there was perhaps more serious than that in our case because the judge might have charged on manslaughter, had the testimony regarding intent been received.

[8] While the pretrial motion to exclude listed as prior convictions one for larceny from the person, two for possession of heroin with intent to distribute, two for possession of heroin, two for possession of a hypodermic needle or syringe, and one for carrying a weapon, defense counsel on direct examination, after bringing out some of the drug convictions, mentioned one for breaking and entering. The discrepancy is not explained.