COMMONWEALTH vs. BRADLEY POOR
(and three companion cases[1]).

Norfolk.   December 16, 1983. — August 22, 1984.

Present: ARMSTRONG, SMITH, & WARNER, JJ.

*Evidence,* Relevancy and materiality, Other offense, Redirect examination,
Prior consistent statement. *Practice, Criminal,* Jury and jurors, Fair trial.

At the trial of indictments arising from an explosion in an apartment in a
public housing project, the judge did not err in admitting evidence of
an earlier explosion which was relevant to show that the defendant
possessed, or had access to, the means to commit the crime. [492-493]
Where defense counsel in a criminal case, while cross-examining a witness
for the prosecution, had directed the witness's attention to portions of
her grand jury testimony in an attempt to show that the witness had
made prior inconsistent statements, the judge did not abuse his discretion
in permitting the prosecutor, on redirect examination, to refer the witness
to the same portions of her grand jury testimony and ask her questions
about it. [494]
Where defense counsel in a criminal case had attempted to impeach tes-
timony of a prosecution witness that she had seen the defendant in the
company of a codefendant shortly before the crime by showing that,
when the witness was interviewed by police officers after the crime, she
had not mentioned the defendant, it lay within the discretion of the judge
to admit as a prior consistent statement testimony that three days after
the police interview the witness had told a grand jury that she had seen
the defendant with the codefendant. [494-495]
At the trial of indictments against a defendant and a codefendant arising from
the bombing of the apartment of a black woman in a public housing
project, during which there was testimony by a witness that a few days
before the bombing she had heard the codefendant, speaking to the
defendant, make violent remarks against blacks, the judge's action in
permitting the jury to consider this testimony against the defendant could
not have prejudiced him in light of earlier testimony about similar remarks
made by the defendant. [495-496]
The judge at a criminal trial did not abuse his discretion in refusing to
question jurors individually concerning the impact on them of two news-

---

[1] One against Bradley Poor and two against John Tilton.

paper articles regarding the case, which appeared during the trial. [496]

INDICTMENTS found and returned in the Superior Court Department on October 26, 1982.

The cases were tried before *Dimond, J.*

*John F. Palmer* for Bradley Poor.

*Susan G. Kauffman* for John Tilton.

*Charles J. Hely,* Assistant District Attorney, for the Commonwealth.

SMITH, J. On September 9, 1982, an explosion and fire occurred in an apartment located in a housing project in Quincy. After an investigation the defendants were arrested and charged with various crimes in connection with the incident. A jury found them guilty of willfully throwing or placing explosives at or near persons or property (G. L. c. 266, § 102), and interference with the civil rights of persons (G. L. c. 265, § 37). They were found not guilty of arson. The defendants allege several errors by the judge which they claim require a reversal of their convictions.

We recite the main facts as they could have been found by the jury, then discuss the points of law raised by either one or both defendants. We shall relate other evidence when it becomes relevant to the analysis. On August 30, 1982, Mrs. Regina Campbell, a black woman, moved into an apartment at 38 Taffrail Road, Quincy, with her three children and young niece. Her residence was located in the Snug Harbor housing project, which consists of one hundred buildings, each divided vertically into four apartments. Bradley Poor, a white male, lived nearby with his wife and children at 30 Taffrail Road. John Tilton, also white, is Poor's brother-in-law and often stayed with Poor's family, although he was not a resident of the project. The project is owned and operated by the Quincy Housing Authority (Authority) and, like all housing projects in Quincy at the time of the crimes, was under an affirmative action agreement with the Department of Housing and Urban Development. This policy required the Authority to fill vacancies by selecting one minority applicant for every three non-

minority applicants, even when the minority applicant had less seniority on the waiting list than nonminority applicants.

On September 9, 1982, around 9:00 P.M., Mrs. Campbell and her children returned home after visiting a relative. She stopped at her back step to talk to a neighbor. As they were talking, they heard a loud noise at the front of Mrs. Campbell's apartment. The noise was characterized by different witnesses as "an explosion," "a loud explosion," "a bang," a "very loud firecracker [sound]." The front living room window was blown out, and its frame and shade were burned. A smoking rag was sticking half in and half out of the window. There was no direct evidence of exactly what caused the explosion and fire. Shortly before the explosion the defendants were observed near the scene and, within a few seconds of the explosion, running away from the smoking window. It was the Commonwealth's theory that the crimes were racially motivated and that the defendants were engaged in a joint enterprise at the time the crimes were committed. We now discuss the claims raised by either one or both defendants.

1. *Admission of testimony as to Poor's prior use of an explosive.* (Both defendants) A Commonwealth witness testified that she lived next door to Poor in the same four-family building. Around the time that her granddaughter was born, (September 6, 1982), she heard a "very loud bang" from the cellar. She stated that firecrackers went off often in her neighborhood, and that the sound she heard was probably the same as the sound of a blockbuster, a firecracker louder than others. She observed smoke coming from the cellar stairwell next to her kitchen door, on the side nearest Poor's apartment. She saw Poor leaving in his car in the parking area in the rear of their house. She was allowed to testify, over objections of both defendants, that she asked Poor not to do it again and that Poor said that "he wouldn't." The judge instructed the jury twice that the evidence was limited to Poor and did not apply to Tilton. Poor argues that the testimony about the explosion heard in the cellar and Poor's subsequent statement about it was not admissible because there was no evidence that the device that caused the cellar explosion was identical in size

and chemical composition to the explosive used in blowing out the window at the Campbells' residence.

Evidence of a defendant's possession of the means to commit a crime within a reasonable time of the charged offense is admissible. *Commonwealth* v. *Watkins,* 375 Mass. 472, 491 (1978). *Commonwealth* v. *Monsen,* 377 Mass. 245, 252 (1979). The sound of the explosion in the cellar was sufficiently similar to the characteristics of the explosion at the Campbell's residence, as testified to by various witnesses, to make the witness's testimony as to Poor's statement relevant, although there was no direct evidence that the two devices were the same type. See *Commonwealth* v. *Russell,* 2 Mass. App. Ct. 293, 295 (1974) (testimony that defendant bought a knife two weeks before the homicide, in which a "sharp instrument" was used, admissible although "sharp instrument" never recovered). An inference could be drawn that Poor possessed or had access to a supply of firecrackers a short time before the crime. The witness could testify as to the sound of the explosion in the cellar without qualifying as an expert. *Commonwealth* v. *Sturtivant,* 117 Mass. 122, 133 (1875). The failure of the witness to pinpoint the exact date or time of the explosion in the cellar went to the weight of her testimony and not to its admissibility.

Poor argues that the evidence was prejudicial because it informed the jury that he had committed a prior crime. Evidence that he possessed and discharged a large firecracker or other explosive in the cellar was, at best, minor criminal misconduct, and any risk of prejudice was substantially outweighed by the probative value of the evidence that Poor possessed or had access to the means to commit the crime within a few days of the date of the offenses.

Tilton's rights were adequately protected by the judge's limiting instructions to the jury, given twice during the course of the witness's testimony, that the evidence was limited to Poor. It must be presumed, in these circumstances, that the jury followed the instructions of the judge. *Commonwealth* v. *Bellino,* 320 Mass. 635, 645 (1947). *Commonwealth* v. *Prendergast,* 385 Mass. 625, 631 (1982).

2. *Admission of grand jury testimony*. (Poor) During the cross-examination of a Commonwealth witness, defense counsel for Poor directed the attention of the witness to portions of her grand jury testimony in an attempt to show that the witness had made prior inconsistent statements. On redirect examination the prosecutor was permitted, over objection, to refer the witness to the same portions of her grand jury testimony and ask her questions about it. The defendant argues that the admission of the witness's grand jury testimony on redirect examination was improper.

The trial judge has discretion with respect to the admission of such testimony. *Commonwealth* v. *Hoffer,* 375 Mass. 369, 375-376 (1978). Where, as here, defense counsel used selected portions of the witness's grand jury testimony, a judge, in his discretion, may permit such questions as are reasonably related to the context of the prior statements that were the subject of the defendant's cross-examination. *Commonwealth* v. *Walker,* 370 Mass. 548, 570 (1976). *Commonwealth* v. *DiLego,* 387 Mass. 394, 399 (1982). During redirect examination the prosecutor's questions focused on the same pages of the grand jury testimony and also covered the same topics raised by defense counsel. There was no error.

3. *Admission of prior consistent statement*. (Poor) On direct examination a Commonwealth witness placed Poor with Tilton on the steps at 38 Taffrail Road shortly before the explosion at the Campbell residence. On cross-examination she was questioned by Poor's counsel in regard to an interview she gave the police on October 22, 1982. She testified that she was interrogated by the police about the bombing incident and what she had observed. She admitted that there was no mention of Poor in the report of the interview. On redirect examination the witness testified, over objection, that she had told the grand jury, on October 25, 1982, that she had seen Poor with Tilton on the steps. Poor argues that the admission of the witness's grand jury testimony as a prior consistent statement was error. We disagree.

As a general rule, a prior consistent statement is admissible in order to rehabilitate a witness only when a claim of bias or

recent contrivance is made. *Commonwealth* v. *Hoffer,* 375 Mass. 369, 375 (1978). On this record the judge could find that Poor was claiming that the witness's testimony was a recent contrivance. Therefore, the prior consistent statement was admissible. *Commonwealth* v. *Darden,* 5 Mass. App. Ct. 522, 528 (1977). The fact that the prior consistent statement was made after the police interview does not render it inadmissible, especially where it was made substantially contemporaneously with the interview. *Id.* at 529-530. In any event, if it was error to admit the prior consistent statement, it was clearly harmless in light of testimony from other witnessess that placed Poor with Tilton immediately before and immediately after the explosion.

4. *The admission of certain statements of Poor against Tilton.* (Tilton) A Commonwealth witness testified that a few days before the explosion she heard Poor say to Tilton, "Well, why don't they just kill all the niggers." There was no response from Tilton. The judge told the jury that the statement was admissible only against Poor. Some days later, the judge in very general terms and without referring to the specific statement of the witness and without mentioning Tilton's name lifted the limitation. At a bench conference regarding the matter, the judge expressly recognized that the statement was not made in the course of the joint venture. He stated that the basis of his ruling was that the statement was "relevant as to the knowledge that Tilton might have had as to Mr. Poor's racial attitude" and that it was "material to show what each knew of the other's attitude toward . . . black residents." Tilton argues that the admission of the statement against him was error because Poor's statement had no legal or logical relevance to the case against him.

As an exception to the hearsay rule, out-of-court statements of joint criminal venturers are admissible if made during the pendency of the criminal enterprise and in furtherance of it. *Commonwealth* v. *Borans,* 379 Mass. 117, 146 (1979). As the judge recognized, the statement was not made in the course of the joint venture, so the exception does not apply. We need not consider whether the statement was admissible against

Tilton on some other ground, see *Commonwealth* v. *Wampler,* 369 Mass. 121, 124 (1975), because we hold that its admission was not reversible error. On the contrary, it was clearly harmless in light of earlier testimony that about an hour before the explosion Tilton was heard to say, "The only way to get these f------ niggers out of here is to burn them out." See *Commonwealth* v. *Pleasant,* 366 Mass. 100, 104 (1974). *Commonwealth* v. *Wampler, supra.*

Tilton objects to the admission of another statement of Poor that Poor had a friend who was killed by a black. The objection is without merit, as the judge told the jury that the statement was admissible only against Poor.

5. *Judge's failure to conduct individual voir dire of jurors during trial.* (Tilton) The trial began on February 23, 1983, and the jury returned a verdict on March 1, 1983. During the course of the trial, two newspaper articles (February 24 and 26) regarding the case appeared in a local newspaper. The February 24 article reported that the prosecutor had stated that two witnesses in the case had been threatened, but that he had "no admissible evidence tying the two defendants to the threats." The article was called to the attention of the judge. He questioned the jurors collectively as to whether they had read anything in the press about the case. The jurors answered in the negative. Tilton admits that the February 26 article did not overstep the bounds of the record. In any event, after the article appeared the judge, once more, made a collective inquiry of the jurors and received the same response. Tilton argues that the judge should have held an individual voir dire of the jurors. The short answer to that contention is that the judge fully complied with the procedures outlined in *Commonwealth* v. *Jackson,* 376 Mass. 790, 797-801 (1978). There was no error.

*Judgments affirmed.*