COMMONWEALTH *vs.* BENNIE HOSEY.

Hampden.    January 11, 1977. — February 22, 1977.

Present: HALE, C.J., GRANT, & BROWN, JJ.

*Evidence,* Hearsay.    *Error,* Whether error harmful.

It was reversible error at a criminal trial to admit testimony by a police
    officer that the mother of an assaulted child had said in the de-
    fendant's presence "that he was responsible for what happened
    to her daughter," where the defendant had replied "that it was not
    him, it was her fault," and where other evidence of guilt was not
    overwhelming. [140-142]
There was no merit to the Commonwealth's contention that at a crimi-
    nal trial a certain hearsay statement was admissible to rehabilitate
    the credibility of a witness. [142]
At a criminal trial medical reports containing material which did not
    relate to the victim's treatment or medical history were not ad-
    missible in their entirety under G. L. c. 233, § 79. [142-143]

INDICTMENT found and returned in the Superior Court
on January 4, 1973.

The case was tried before *Tisdale, J.*

*Margaret Hayman* for the defendant.

*L. Jeffrey Meehan,* Special Assistant District Attorney,
for the Commonwealth.

HALE, C.J.    After a retrial[1] by jury the defendant was
convicted on indictment 33301 of carnal abuse of a female
child under the age of sixteen years and was sentenced.
He has appealed pursuant to G. L. c. 278, §§ 33A-33G. The
questions raised deal primarily with the admissibility of
certain extrajudicial statements made by the mother of the
assaulted child.

No eyewitness testified at trial to the manner in which
the child had sustained injury. The Commonwealth's case

---

[1] See *Commonwealth* v. *Hosey,* 368 Mass. 571 (1975).

was circumstantial, based primarily on the testimony of the child's mother. At trial the mother testified that on the afternoon of November 2, 1972, she and her two children had picked the defendant up at work and had driven to the home where all of them lived. After going out to do some errands and have supper, they returned home, and she put the children to bed. After an unsuccessful attempt to find a babysitter so that she and the defendant could go out together, the defendant agreed to stay with the children while the mother went out to visit a girlfriend. The defendant, with the children in the car, drove the mother to a friend's house, dropped her off, and left. When the mother discovered that her friend was not at home, she went to a neighborhood bar. That was at approximately 10:00 P.M.

A next door neighbor, Mrs. H., testified that at approximately 10:30 P.M. that evening the defendant came to her home. He said that he had had an accident with his car and requested that Mrs. H. drive him or lend him her car so that he could look for the mother. Mrs. H. refused but called a male friend, who came to her house and, between 11:30 P.M. and midnight, drove the defendant to look for the mother. The two men stopped for a drink and then drove to the house where the defendant had left the mother earlier that evening. When they did not find the mother there, they returned to Mrs. H.'s house after being gone for approximately forty-five minutes.

The defendant had a couple of drinks at Mrs. H.'s house and left to go home. About a half hour later he knocked on Mrs. H.'s door and said that one of the children was "all bloody." While Mrs. H.'s friend and the defendant remained at Mrs. H.'s house, she ran next door and found the child with a cut on her forehead; the crib sheet was bloody. She returned home. She then noticed blood on the defendant's trousers and asked what had happened. The defendant said he did not know.

The mother testified that when she returned home from the bar at approximately 2:30 A.M. the defendant came out of the house, yelled at her, asked where she had been,

and struck her. He told her he had smashed the car and that the baby was bleeding to death. He was extremely agitated. The mother found both children in the crib; the victim was awake; she had a cut on her forehead, and there was dried blood on the insides of her legs. There were also stains on the crib sheet and on the bedspread in the other bedroom. The defendant called the police.

Officer Bigos, who responded to the call, testified that when he and another policeman had arrived at the house they were met at the door by the mother, who was crying. Her hair was mussed, and her dress was torn. Officer Bigos asked the mother where her daughter was and was shown to the bedroom where the two-year-old victim lay awake in a crib with her month-old sister. The sheet was covered with red stains; the victim's pajama pants were pulled down; there were red stains on her forehead and genital area, and clothes were strewn around the room. Officer Bigos took the two children and their mother to the Holyoke Hospital, where the victim was taken to the emergency room. The defendant arrived later by taxicab. In the waiting room of the hospital he and the mother argued and were yelling and swearing. The defendant was arrested for drunkenness and taken to the Holyoke police station, where he was later charged with the offense in question.

In order to prove the nature and extent of the child's injuries, the Commonwealth introduced medical records and testimony of a surgeon at Holyoke hospital, who testified that in his opinion the injuries to the child were caused by forceful penetration of the vagina.

1. The first question for review is whether a statement made by the mother to the defendant in the presence of Officer Bigos was inadmissible hearsay.

Officer Bigos testified, over objection and exception, that in his presence the mother had said to the defendant "that he was responsible for what happened to her daughter, the daughter being injured," and that the defendant replied, "that it was not him, it was her fault." The defendant seasonably moved to strike that statement and the response and excepted to the denial of his motion.

Both the defendant and the Commonwealth have argued that the evidence was admitted on the theory that it was an implied admission. The Commonwealth argues that the defendant's response was equivocal and therefore that the evidence was admissible. See *Commonwealth* v. *Machado,* 339 Mass. 713, 715-716 (1959), and cases therein cited. However, we agree with the defendant that his denial was unequivocal and that his motion to strike should have been granted.

The long standing rule in Massachusetts on the admissibility of such a statement, as stated in *Commonwealth* v. *Trefethen,* 157 Mass. 180, 197 (1892), and recently applied in *Commonwealth* v. *Pleasant,* 366 Mass. 100, 102 (1974), is that "[i]f a defendant is charged with crime, and unequivocally denies it, and this is the whole conversation, it cannot be introduced in evidence against him as an admission." The response of the defendant here was unequivocal, and it should have been struck as hearsay unless it was admissible for another purpose.

The Commonwealth argues several other grounds on which that evidence might have been admissible, but we find no merit in any of them. It also argues that if the evidence was erroneously admitted, it was harmless error because it was merely a restatement of the mother's previous testimony, admitted without objection, that when she had returned home and found her daughter injured she had asked the defendant, "what the hell he had done," and that the defendant did not respond. Since that accusation and the lack of response were already before the jury, the Commonwealth argues, the testimony by Officer Bigos was merely cumulative and thus, even if inadmissible, its admission was harmless.

Although the testimony in question may have covered the same ground as that already in evidence, viewing the two statements in relation to the total evidence against the defendant, we cannot say that the error in its admission was harmless. Moreover, although there was other evidence from which the jury might have found the defendant guilty, we cannot say that that evidence was over-

whelming. Contrast *Commonwealth* v. *Hall,* 369 Mass. 715, 728 (1976).

2. Later, on redirect examination, Officer Bigos testified that when he arrived at the home of the mother and the defendant, the mother had met him and that, in the absence of the defendant, the mother had told him that the defendant had assaulted her child. That statement was admitted, and the defendant excepted on the ground of hearsay.

That statement was not only rank hearsay, it was also the conclusion of one who had no firsthand knowledge of what had happened. The Commonwealth's claim that the statement was admissible to rehabilitate the credibility of Officer Bigos is inapposite, because the record reveals that nothing had been developed during the cross-examination of Officer Bigos which contradicted his prior testimony as to the conversation between the mother and the defendant in his presence. Nor was there any claim that Bigos' testimony was a recent contrivance. See *Commonwealth* v. *Heffernan,* 350 Mass. 48, 52, cert. den. 384 U. S. 960 (1966).[2]

3. The defendant claims that portions of medical records admitted in evidence contained inadmissible hearsay and should have been excluded and that other portions containing evidence tending to support his claim that the mother was responsible for the injuries were erroneously excluded. It is true that the facts contained in the challenged portion of the medical report[3] are hearsay, and, ex-

_____

[2] The Commonwealth also argues that the testimony was admissible as it was in the officer's notes, which defense counsel had examined. The defendant's counsel had asked Officer Bigos to indicate where he had noted certain statements attributed to the mother (see statements in part 1 of this opinion). We have not discussed that contention as the notes were not read to the jury, nor were they admitted in evidence. See generally *Commonwealth* v. *Marsh,* 354 Mass. 713, 721-722 (1968).

[3] "This 2 year old girl was brought to the emergency room at 2:55 a.m. The story as related by the mother as follows: The 2 year old baby and the 4 week old baby were brought to Holyoke by her 'boyfriend' Benny about 8:30 in a car and she was left off to visit some friends there. Then, both children were brought back to the apartment where he, according to the mother, was to babysit and watch T.V.

"When the mother returned, he came out — allegedly hit the mother

cept for the sentence, "The mother said she came into the house and found both infants — one red with blood — present," they do not appear to relate to "treatment or medical history." They were not admissible in their entirety under G. L. c. 233, § 79.[4] Those portions of the record which the defendant claims should have been admitted in support of his claim that the mother was responsible for the child's injuries are not before us, but from the description in the defendant's brief of the contents of those records, we must conclude that they were not concerned with "treatment or medical history" and were properly excluded.

*Judgment reversed.*
*Verdict set aside.*

---

— and said that the children had been hurt and he went and called the police. The mother said she came into the house and found both infants — one red with blood — present. The police came at the request of the 'boyfriend' and they were brought to the emergency room."

[4] General Laws c. 233, § 79, provides in pertinent part: "Records kept by hospitals ... shall be admissible ... as evidence in the courts of the commonwealth so far as such records relate to the treatment and medical history of such cases ... but nothing therein contained shall be admissible as evidence which has reference to the question of liability...."