COMMONWEALTH *vs.* TYRONE A. HOWARD.

Hampshire.    May 15, 1979. — August 31, 1979.

Present: KEVILLE, BROWN, & DREBEN, JJ.

*Practice, Criminal,* Disclosure of statements by defendant. *Evidence,* Photograph, Hearsay. *Error,* Harmless error.

Where the Commonwealth failed to inform the defense counsel at a criminal trial of a prior statement by the defendant as to his whereabouts at the time of the crime and where the prosecutorial error was compounded by the introduction of inadmissible hearsay to the effect that the defendant had not been told what time the crime occurred prior to making his statement, the defendant was entitled to a new trial. [319-323]

There was no merit to a defendant's contention that the differences between the pictures of him and the other pictures in each of two sets shown a witness were inherently impermissibly suggestive. [323-324]

The judge at a criminal trial did not abuse his discretion in refusing the defendant's request to "sanitize" photographs in an array which had been shown to the victim by separating the double view pictures. [324-325]

INDICTMENTS found and returned in the Superior Court on November 30, 1977.

The cases were tried before *Apkin*, J., a District Court judge sitting under statutory authority.

*Thomas Lesser* (*David R. Kaplan* with him) for the defendant.

*Stephen R. Kaplan*, Assistant District Attorney, for the Commonwealth.

DREBEN, J. The defendant was convicted by a jury of armed robbery and of putting in fear for the purpose of stealing, both offenses arising out of a robbery of a gas station in Hadley, Massachusetts. The defendant has filed numerous assignments of error under G. L. c. 278, §§ 33A-33G, but since we decide that the judgments must be reversed and a new trial ordered, we shall discuss only those matters which are necessary to our decision or which are likely to arise at retrial.

1. The errors which require reversal concern evidence introduced during the trial which showed that, although the defendant was not informed of the time of the robbery, he knew exactly when it had occurred. This evidence was damaging to the defendant and, indeed, in his closing argument, the prosecutor referred to the defendant's statement showing his knowledge of the time of the robbery as "of pivotal importance in this case."

The problem with the evidence is that it involved both a prosecutorial error of judgment and inadmissible hearsay. Prior to trial, the defendant filed a motion for production of his statements,[1] which was allowed. Three days

---

[1] The motion asked the court to "order the Commonwealth to permit the defendant to inspect and copy all statements, either written or transcribed, and reduce to writing any oral statements made by the defendant and provide the defendant with a copy of such writing, which statements . . . [a]re intended to be offered into evidence at the

before trial the Commonwealth produced a number of statements, but did not include the statement referred to as "of pivotal importance" in the prosecutor's closing argument. The defense first learned of it when a State trooper, David Kenney, testified during the Commonwealth's case in chief. Kenney testified that on the night of the defendant's arrest he had overheard the defendant say to his alleged partner [2] in the robbery, "They can't get us for robbing that station, at that time we were next door. We watched Monday Night Football and before that we'd watched Logan's Run on television." The defendant immediately objected, asked for a dismissal based on prosecutorial misconduct, then for a mistrial, and, finally, moved to strike the statement. After the prosecutor told the court that he had first learned of the statement approximately twenty to thirty minutes before Kenney took the stand, the judge ruled the statement admissible and denied all of the defendant's motions.

The prosecutor was at fault in not informing defense counsel of the statement prior to putting Kenney on the stand. He failed to comply with his duty of disclosure which continued "during" as well as "before trial." *Commonwealth* v. *Gilbert*, 377 Mass. 887, 893 (1979).

The defendant argues that the judge's ruling demands reversal. However, we need not determine whether reversal on this ground alone is required. Here, the prosecutorial error was compounded by the introduction of inadmissible hearsay, which, when combined with the defendant's statement as to his whereabouts at the time of the robbery, was clearly prejudicial.

---

trial of the indictment(s)" or "[a]re intended by the Commonwealth to constitute evidence as to guilt or innocence of the defendant . . . ." The statements supplied pursuant to the order included oral statements made by the defendant.

[2] The other alleged participant in the robbery, one Clifford Patrickson, was tried separately and was acquitted.

The hearsay evidence was introduced by the Commonwealth on redirect examination of Trooper Kenney. Earlier, following Kenney's testimony as to the defendant's statement concerning his whereabouts, the defense had sought, on cross-examination of this witness, to elicit testimony that although Kenney had not told the defendant the time of the robbery, he could have learned about the time from other sources. The defense established that three other State troopers had been with the defendant for between ten and thirty minutes prior to Kenney's arrival and that Kenney did not know whether any of these officers had told the defendant the time of the robbery. Defense counsel continued his questioning, and the trooper testified that he later became aware of what had transpired. Defense counsel asked no question as to what Trooper Kenney had subsequently learned. The relevant colloquy between defense counsel and Trooper Kenney is set forth in the margin.[3]

---

[3] Q. "And you don't know, then, do you, and you can't say for certain, certainly, that Mr. Howard was not asked, 'Where were you at 8:00 o'clock on Monday, November 7?'"

A. "No, I don't know that."

(A few questions later)

Q. "Then you were not aware of what may or may not have been said to Mr. Howard concerning the Hadley gas station robbery during those periods of time?"

A. "At that time I wasn't aware, no."

Q. "You are aware now?"

A. "Somewhat, yes."

Q. "But not totally?"

A. "Correct."

Q. "So then you don't know for certain whether or not someone asked — one of the other troopers or the other State Police Officers — asked Mr. Howard where he was at 8:00 o'clock, or at about 8:00 o'clock on Monday, November 7th?"

Objection (by the prosecutor).

A. "Yes, I do know."

Kenney's answer was simultaneous with the objection. After a side bar conference his answer was allowed to stand. No further question relating to this point was asked by defense counsel.

On redirect examination, over the defendant's objection and exception, the prosecutor was allowed to ask Trooper Kenney a series of questions relating to the conversations he had had with the other State troopers after they had left the defendant's apartment. More particularly, the prosecutor asked Trooper Kenney:

Q. "And what did you ask them?"

A. "I asked each officer who was present if they had mentioned any time to Mr. Howard or Mr. Patrickson[4] concerning when the robbery occurred, or anything that would indicate to Mr. Howard or Patrickson what time period we were interested in. They replied, 'No.' "

The answers given to Trooper Kenney by the other troopers, who did not testify at trial, could not be offered to prove the fact that they had not told the defendant the time of the robbery. "The broad rule on hearsay evidence interdicts the admission of a statement made out of court which is offered to prove the truth of what it asserted." *Commonwealth* v. *DelValle,* 351 Mass. 489, 491 (1966), *S.C.,* 353 Mass. 684 (1968). The Commonwealth argues, however, citing *Commonwealth* v. *Cataldo,* 326 Mass. 373, 377 (1950), and 1 Wigmore, Evidence § 15 (3d ed. 1940), that the defendant opened up the question of Trooper Kenney's "state of awareness" and, therefore, that the hearsay evidence was admissible "to prevent the jury from being imposed on with a partial truth." We disagree. Unlike the situation in *Cataldo,*[5] the defendant here did not himself introduce any hearsay evidence; he did not ask Trooper Kenney to recount the conversations he had had with the other officers. Thus, the impermissible type of evidence was not first introduced by the defendant. Moreover, the evidence was not needed to rehabilitate the witness or prevent the jury from being misled. See *Commonwealth* v. *Hosey,* 5 Mass. App. Ct. 138,

[4] See note 2, *supra.*

[5] In that case "[b]oth attorneys apparently asked the same question and received the same answer." *Id.* at 377.

142 (1977). The only purpose for which it could have been offered was to prove an irrelevant collateral matter which had no bearing on the defendant's guilt, namely Trooper Kenney's "state of awareness" after he left the defendant's apartment. See *Commonwealth* v. *Pleasant,* 366 Mass. 100, 103 (1974). See also *Mowry* v. *Smith,* 9 Allen 67, 68-69 (1864). However, the prosecutor did not use the evidence for this limited purpose. On the contrary, he used the evidence entirely for the impermissible purpose of showing the truth of the statements.[6] Permitting this testimony under the narrow state of awareness exception to the hearsay rule "would in effect permit the introduction of such declarations to prove their truth" and would "allow the exception to swallow the rule." *Commonwealth* v. *DelValle,* 351 Mass. at 493. The evidence should have been excluded.

Nor do we accept the Commonwealth's argument that the defendant suffered no prejudice by the introduction of the hearsay. The prosecutor's closing argument belies the Commonwealth's claim. See note 6. It is evident that the error was not harmless. (For discussions concerning the standard of harmless error, see *Commonwealth* v. *Turner,* 371 Mass. 803, 813 [1977]; *Commonwealth* v. *Morrison,* 1 Mass. App. Ct. 632, 635 [1973]; and *Commonwealth* v. *Hanger,* 377 Mass. 503, 510-511 & n.8 [1979].)

2. We next turn to questions of identification which may recur on retrial. The defendant argues that the differences between the pictures of him and the other pictures in each of the two sets shown to the victim of the

---

[6] Just before appealing to the jury for a fair verdict, the prosecutor said, "I would again like to reiterate ... that I think it's awfully significant that Mr. Howard was overheard saying what he did say to Mr. Patrickson. You've heard it. But I'll say it again. Trooper Kenney didn't tell him what time it took place; Trooper Kenney talked to his fellow troopers afterward and said, 'Look, this is important, ... did any of you tell Howard ... what time ... this took place?' None of them did. But yet 20 minutes later, not having been told that it happened at night, he was overheard to say, "They can't pin it on us because we were in that apartment.'"

robbery were inherently impermissibly suggestive.[7] However, the second set of pictures, which contains the most significant differences, is very similar to the array discussed in *Commonwealth* v. *Clark*, 378 Mass. 392, 398-401 (1979), and we consider the defendant's claim foreclosed as to both sets by that decision. See also *Commonwealth* v. *Mobley*, 369 Mass. 892, 894-895 (1976).

The defendant also alleges error in that the judge refused to sanitize the photographs in the first set, as requested by the defendant, by separating the double view pictures. The defendant claims that he wanted to introduce these pictures in evidence and that the judge's failure to order the photographs cut in half and put on separate exhibit sheets was error. This is not a situation where the prosecution is introducing the pictures and should "sanitize" double type pictures so as to avoid the suggestion that the defendant has a prior police record. See *Commonwealth* v. *Nassar*, 351 Mass. 37, 42-43, 45-46 (1966), *S.C.*, 354 Mass. 249, 258, 259, 261-262 (1968), cert. denied, 393 U.S. 1039 (1969); *Commonwealth* v. *Gerald*, 356 Mass. 386, 388 (1969); *Commonwealth* v. *Rodriguez*, 378 Mass. 296, 309 (1979); *United States* v. *Fosher*, 568 F.2d 207, 214 (1st Cir. 1978). Here, the defendant wanted to introduce the photos to the jury so they could decide whether the pictures were so suggestive as to cast doubt on the victim's subsequent identification of the defendant. It was for the judge to determine whether photographs presented to the jury in a form different from the array presented to the victim would have reflected the situation fairly and would have been of assistance to the jury. He might well have thought that a separation of the pictures, which would require placing two tan tapes[8] on

[7] The first set contains double photos (mugshots) of persons other than the defendant masked with white tape while the defendant's mugshot is masked with tan tape. The second array contains fourteen mugshots and two polaroid pictures, one of the defendant and one of Patrickson.

[8] See note 7.

the defendant's pictures, would not have truly represented the pictures shown to the victim. It was within his discretion to refuse to separate the photographs. See *Charles L. Hazelton & Son* v. *Teel,* 349 Mass. 617, 622 (1965).

*Judgments reversed.*

*Verdicts set aside.*