## COMMONWEALTH vs. JEFFREY R. LAPKA.

Essex.   October 13, 1981. — January 8, 1982.

Present: GREANEY, CUTTER, & KASS, JJ.

*Practice, Criminal,* Discovery, Examination of jurors.   *Constitutional Law,* Admissions and confessions.

Failure by the prosecutor in a criminal case to disclose an admission made by the defendant to a police officer and never reduced to writing did not require a mistrial where there was no showing that the defendant had been prejudiced by the nondisclosure.   [29-31]

At the trial of a criminal case there was no error in denying the defendant's motion to suppress a statement made by him to a police officer who testified that when the defendant made the statement he appeared to be under the influence of a narcotic drug because his eyes appeared glassy, where in all other respects the defendant had spoken and acted rationally and had been advised of his rights before he made the statement.   [31-33]

At the trial of an armed robbery indictment the judge did not abuse his discretion by refusing to ask prospective jurors whether any juror or a member of his family had ever been employed in a retail establishment and whether any juror or a member of his family had ever been a customer of the store which had been robbed.   [33-35]


INDICTMENT found and returned in the Superior Court Department on December 10, 1979.

The case was tried before *Barton, J.*

*Brownlow M. Speer* for the defendant.

*John Gillen,* Assistant District Attorney, for the Commonwealth.

GREANEY, J.   After a trial before a jury in the Superior Court, the defendant was convicted on two counts of armed robbery.   G. L. c. 265, § 17.   On appeal, the defendant argues that the convictions must be reversed on the grounds (1) that the prosecutor violated a pretrial discovery agreement by failing to disclose to his trial counsel an admission

of guilt which the defendant had made to police; (2) that this admission should have been excluded as involuntary and in violation of his rights under *Miranda* v. *Arizona*, 384 U.S. 436 (1966); and (3) that the trial judge abused his discretion in refusing to ask prospective jurors two questions proposed by the defendant for voir dire. We affirm the convictions.

This case arises out of the robbery on Thanksgiving day, November 22, 1979, of a Cumberland Farms store (the store) located in Lynn. At approximately noon on that day, the defendant was driving from East Boston to Salem, accompanied by a friend, one Timothy Blakehorn. Upon reaching Lynn, however, the defendant turned off and parked on what was described as a "side street . . . around the corner" from the store, which is one block away. The defendant testified that he took this street in order to avoid a set of traffic lights on the street he had been traveling, and that he stopped because Blakehorn said he wanted to buy some cigarettes.

The defendant remained in the car. Blakehorn went to the store and proceeded to hold it up. He threatened the cashier with a screwdriver and was given the money from the cash register and the safe. He also took money from the cashier's sister-in-law and from several other persons in the store.

Blakehorn then returned to the car, and the defendant drove off toward Salem. In Salem, a police officer who had been notified of the robbery attempted to pull the car over, and a high speed chase ensued. The defendant testified that he sought to elude the police because he did not think they would believe that he was not involved in the robbery. When the defendant finally stopped the car, both he and Blakehorn ran off. The officer in pursuit testified that the defendant emerged from the driver's side of the car.

The defendant was apprehended while running through the backyard of a house nearby, arrested and placed in a police cruiser. At that point, he was advised of his Miranda rights, and he indicated that he understood them. When

asked who his "partner" was, the defendant first denied having a partner, and then told police that they would probably find "the other guy" in the house behind which the defendant was arrested. However, the police were unable to apprehend Blakehorn at that time (or at any time thereafter).

The defendant was then taken to the Salem police station. He was again informed of his Miranda rights, and again indicated that he understood, but he was not questioned at that time. Shortly thereafter, the defendant was taken to the Lynn police station, where he was advised of his rights once again. This time, he was also asked to read the warnings for himself, and to sign the back of the card on which they were printed, both of which he did. The defendant was then questioned by Detective Francis Deveau of the Lynn police. Deveau testified that it was during the course of this questioning that the defendant admitted that he knew in advance that Blakehorn was planning to rob the store.

On January 11, 1980, the prosecutor and defense counsel attended a pretrial conference and filed a report thereof. See Mass.R.Crim.P. 11(a), 378 Mass. 862 (1979). This report stated that the "Commonwealth agrees to provide the defendant [with] . . . written or recorded statements of the defendant in [the] possession, custody or control of the Commonwealth."[1] Pursuant to this agreement, the prosecutor then furnished defense counsel with the reports of three police officers. One of these was the report of Detective Deveau, which contained several statements made by the defendant during the interrogation but made no mention of the admission in issue here.

---

[1] The conference report was filed on a printed form. The form language quoted above is virtually identical to that of Mass.R.Crim.P. 14(a)(1)(A), 378 Mass. 874 (1979), which provides that a defendant, on motion, shall have mandatory discovery of "any *written or recorded statements* made by the defendant within the possession, custody, or control of the prosecutor" (emphasis added).

The defendant made no pretrial motion to suppress any statements.  On the second day of trial, however, the judge, having been informed of the prosecutor's intention to offer an admission, ordered voir dire sua sponte on the issue of its voluntariness.  On voir dire, Detective Deveau related the critical portion of his interrogation as follows.  "I said [to the defendant], do you know why [Blakehorn] was going in [to the store]?  He said yeah."  Following testimony regarding several other statements made by the defendant,[2] the judge ruled that all such statements had been voluntary and were admissible.

Deveau then repeated his testimony regarding the admission in the presence of the jury, and this time he was somewhat more explicit.  He testified that the defendant told him that "they decided to stop at Cumberland Farms where Timothy Blakehorn went and held up the place.  I said, you knew what he was doing, what was coming down.  And he said, yeah.  I knew he was going to hold it up."[3]

The following morning, defense counsel filed a motion for a mistrial on the ground that the prosecutor's failure to disclose this statement in discovery constituted a violation of the pretrial agreement, and had irreparably prejudiced the defense.  At a hearing on the motion that same morning, the prosecutor represented that she had not been aware of the admission until she interviewed Detective Deveau on "either Wednesday, Thursday, or Friday of last week when

---

[2] Deveau also testified that the defendant originally claimed not to know Blakehorn, and that Blakehorn had stopped the defendant's car in Lynn and forced him to drive to the store and then to Salem.  Deveau further testified, however, that the defendant ultimately admitted knowing Blakehorn, and admitted that they were driving together.  In addition, a Salem police officer testified that at the time of the arrest, the defendant had told him where to look for "the other guy."  All of this testimony was subsequently repeated before the jury but the defendant does not address himself to the admissibility of these statements.

[3] The defendant subsequently testified and denied ever making such a statement.  He testified that he had no idea that Blakehorn was planning to rob the store, and that he first became aware of the robbery when Blakehorn told him of it as they were driving away.

this case was called for trial,"[4] and that she did not subsequently reduce the admission to writing. In addition, the prosecutor admitted that she did not inform defense counsel of the statement once she learned of it. She took the position, however, that she had no obligation to disclose such an oral statement not reduced to writing under rule 14(a) (1) (A), or under the pretrial agreement pursuant to rule 11(a), and that it was therefore the defendant's obligation to request disclosure of such statements by separate motion.[5] Defense counsel disagreed with this analysis, and argued further that the nondisclosure was prejudicial because he might have moved to suppress the admission had he known of its existence. The judge did not formally rule whether the nondisclosure was improper. Rather, he apparently assumed that it was, and proceeded to focus on the defendant's claim of prejudice. For this purpose, he offered to allow the late filing of a motion to suppress the admission, and defense counsel accepted this arrangement.

The defendant's motion to suppress was heard that afternoon, and the testimony at that hearing was essentially the same as that presented at the earlier voir dire. Following the hearing, the judge denied the motion and readopted the findings and rulings which he had made after the previous hearing. In addition, the judge then denied the defendant's motion for a mistrial, ruling that the hearing and denial of the motion to suppress established that no prejudice had resulted from the Commonwealth's nondisclosure.

[4] The record indicates that the trial commenced on the previous Thursday, March 20, 1980. Based on the prosecutor's representation above, it appears that she may have known of the admission on the day prior to the start of the trial, and that she was certainly aware of it for at least several days prior to Detective Deveau's testimony on Tuesday, March 25.

[5] In fact, the defendant had moved for production of all statements made by him, including "the substance of any oral statements." That motion, however, was filed on the day trial commenced, and the defendant concedes that this motion was not pressed. See Commonwealth v. Mains, 374 Mass. 733, 738 (1978). The discovery problem in this case would have been alleviated had the motion been presented and allowed.

1. The defendant argues that the prosecutor's failure to disclose the defendant's admission once she learned of it violated the pretrial discovery agreement. The Commonwealth urges that the nondisclosure of this statement did not violate the agreement because the prosecutor had no obligation to reveal an oral statement which had not been reduced to writing. We do not go into the correctness of either position. Nor need we discuss the extent to which the relevant cases imposed any duty of disclosure upon the prosecution. See *Commonwealth* v. *Lewinski*, 367 Mass. 889, 903 (1975); *Commonwealth* v. *Blaikie*, 375 Mass. 601, 607 (1978); *Commonwealth* v. *Gilbert*, 377 Mass. 887, 893-894 (1979); *Commonwealth* v. *Cundriff*, 382 Mass. 137, 147-151 (1980); *Commonwealth* v. *Howard*, 8 Mass. App. Ct. 318, 320 (1979). Cf. *Commonwealth* v. *Spann*, 383 Mass. 142, 148-149 (1981). Even assuming that the prosecutor's failure to make an immediate disclosure of the defendant's oral admission constituted a violation of Mass.R.Crim.P. 14(a)(1)(A), that failure has not been shown to have been prejudicial to the defendant. Under the prevailing standard, the trial judge's refusal to exclude the admission or grant a mistrial is only reversible error if the defendant makes a "showing that [he] was significantly prejudiced at trial by the [non]disclosure," or if he shows "how a new trial would substantially cure any error." *Commonwealth* v. *Cundriff*, *supra* at 150. The cases preclude any finding of prejudice here.

As the Commonwealth points out, *Commonwealth* v. *Cundriff*, *supra*, is squarely in point on its facts, including the fact that the trial judge held a voir dire to determine whether the defendant's oral admission was voluntary and in compliance with Miranda requirements. There, the court held that no prejudice was shown in light of the fact that the interrogating officer was "cross-examined [by defense counsel] about the circumstances [of] the defendant's statement, both at the voir dire and at the trial." *Id.* at 151. See *Commonwealth* v. *Gilbert*, *supra* at 895. See also *Commonwealth* v. *Spann*, *supra* at 149, and the fact that "defense

counsel did not seek any additional time for investigative purposes . . . [or] lodge any objection [on that ground] to resuming the trial," *Commonwealth v. Cundriff, supra* at 150. See *Commonwealth v. Gilbert, supra* at 895-896. See also *Commonwealth v. Redding*, 382 Mass. 154, 156 (1980).[6] Moreover, the court in *Cundriff* appears to suggest, as a general matter, that where an undisclosed statement is inculpatory rather than exculpatory, prejudice is unlikely since even timely disclosure would not enable defense counsel "to prepare and present its case in such a manner as to create a reasonable doubt that would not otherwise have existed." *Id.* at 149 n.19 (quoting standard stated in *Commonwealth v. Wilson*, 381 Mass. 90, 114 [1980]).

The defendant argues, in essence, that reduction of the problem to a rule of prejudice strips discovery of any efficacy, leaving it a right without a remedy, with the possible effect of encouraging additional nondisclosures by prosecutors in the future. We emphasize that the cases cited above may impose discovery obligations greater than those stated by the black letter of rule 14(a) (1) (A), and by the Reporters' Notes to that portion of the rule which were relied upon by the prosecutor in this case. See *Commonwealth v. Lewinski*, 367 Mass. at 903 ("[T]he substance of any oral statements of a defendant, available to the prosecution, shall be delivered as matter of course . . . not later than the commencement of trial"). See also *Commonwealth v. Gilbert, supra* at 893-894, discussing *Lewinski* standards ("[I]t was, after all, a matter of choice on the [prosecutor's] part whether he would reduce to writing the statement made to him, and . . . the question of [his] duty should not be made

---

[6] Other similarities to the *Cundriff* case include the fact that the defendant did not claim that his statement would be inadmissible at a second trial, *id.* at 151 n.23; see *Commonwealth v. Blaikie, supra* at 606-608; and the defendant's argument, which the court correctly dismissed as speculative, that the disclosure of the admission might have influenced defense counsel's decision regarding the advisability of plea bargaining; *Commonwealth v. Cundriff, supra* at 149-150; see *Commonwealth v. Gilbert, supra* at 894-895.

to turn on his own election"). Until and unless the possible variance between the rule and the cases is dealt with by appropriate alteration or clarification of the rule itself, prosecutors should feel bound to comply with the broadest interpretation of the decided cases, possibly broader than the precise language of rule 14(a) (1) (A), and they should, as a matter of course, make disclosure of the substance of oral statements of a defendant when they deliver the written statements of their witnesses. We also expect that police personnel will not frustrate such disclosures by delaying reduction to writing of defendants' oral admissions.[7] See *Commonwealth* v. *Gilbert*, 377 Mass. at 893. Prosecutors who fail to comply will run the risk that any nondisclosure may be found to be a prejudicial violation of rule 14, resulting in possible mistrial, and they may also invite disciplinary sanctions. Also, trial judges facing a situation of nondisclosure, whether culpable or not, possess a reasonably wide range of discretion to remedy any problem by tailoring relief to the particular circumstances of the case before them. See Mass. R.Crim.P. 14(c) (1), 378 Mass. 880 (1979); *Commonwealth* v. *Delaney*, 11 Mass. App. Ct. 398, 402 (1981).

2. The defendant next argues that the trial judge erred in failing to exclude the defendant's admission. We disagree.

The circumstances of the making of the admission were explored at two separate hearings, and again before the jury. The undisputed evidence, taken together with the trial judge's written findings, reveals the following. The defendant was advised of his Miranda rights on three separate occasions, one of which was immediately prior to the questioning by Detective Deveau. The defendant conceded on cross-examination that he signed the back of the Miranda card, and that he understood Deveau's questions. When

---

[7] The defendant suggests that the police might deliberately avoid putting a defendant's oral admissions in their reports in order to prevent the prosecutor's duty of disclosure from arising. Admissions of the sort made here constitute the high cards of police investigation and invariably form the cornerstone of the prosecution's evidence. A prosecutor would expect them to be put in a police investigative report as a matter of course.

asked whether he had any difficulty in answering, he stated that "other than being nervous," he answered to the best of his ability.

Deveau testified that he had no difficulty understanding the defendant. Although the defendant asked that questions be repeated on a "couple of occasions," Deveau testified that his speech was not slurred, that he "didn't ramble on," that his answers were coherent, and that he appeared no more nervous than most other people under questioning. Deveau also testified that the defendant had no difficulty walking, sitting down, or signing the card. In addition, it appears that the defendant even recognized one of the Salem police officers, and said to him "You remember me, don't you . . . [from] the moped [incident]?"

The defendant's argument as to involuntariness rests principally on Deveau's additional testimony that, in his opinion, the defendant "had the appearance of being under the influence of [a drug]." Deveau went on to testify, however, that he formed this opinion because the defendant's eyes appeared glassy, "and only [for] that reason." In addition, Deveau testified that he felt that "if [the defendant] was . . . under the influence, he wasn't that heavily under the influence that he couldn't understand what was being said," and that the defendant's behavior was "unlike that of anybody that would be fully under drugs that I have seen in the past."

As to this issue, the trial judge made the following finding: "The court finds that the defendant was not under the influence of a drug. The officer's opinion was based solely on the defendant's eyes. Otherwise the defendant's behavior did not exhibit signs that he was affected by a drug in any way. He spoke and acted rationally, had use and complete control of all his faculties, and responded rationally and coherently to questioning." We see no reason to disturb his finding.[8] On the ultimate issue, the judge concluded

---

[8] We note that the defendant told Deveau during the questioning that he was a participant in a drug rehabilitation program, and that he had re-

that the defendant "respon[ded] to police questioning freely and voluntarily," and that it was made "without fear, threats, coercion or . . . promise of reward."[9] Based on our independent review, under applicable standards (*Commonwealth* v. *Cruz*, 373 Mass. 676, 688 [1977]; *Commonwealth* v. *Wilborne*, 382 Mass. 241, 251 [1981]), we conclude that the Commonwealth met its heavy burden of proving that the defendant had made a knowing, intelligent and voluntary waiver of his Miranda rights (*Commonwealth* v. *Gaulden*, 383 Mass. 543, 547 [1981]), and that the statement was voluntary in the totality of the circumstances, *Commonwealth* v. *Meehan*, 377 Mass. 552, 563 (1979).

3. At the outset of trial, the defendant filed a motion, pursuant to G. L. c. 234, § 28, requesting that prospective jurors be asked four special questions on voir dire. This motion was allowed as to the first two questions[10] and denied as to the others, which read as follows: "3. Have you, or any

---

ceived medication earlier that day as part of his treatment. Given this knowledge, and the appearance of the defendant's eyes, it was Deveau's duty to take "[s]pecial care" to ensure that the defendant did not "unknowingly relinquish[ ] his constitutional rights." *Commonwealth* v. *Hooks*, 375 Mass. 284, 289 (1978). See *Commonwealth* v. *Hosey*, 368 Mass. 571, 577-579 (1975). Given the evidence that the defendant appeared to be functioning normally in all other respects, we think that duty was satisfied here. We note also that such normal behavior is consistent with the defendant's testimony that he had been taking such medication seven days a week for approximately nine months, that his dosage had been decreased from the original amount, and that he had been working part time during this period.

[9] At one point during the questioning, Deveau told the defendant, "I cannot make any promises to you. However, if you're cooperative it might be favorable to you." The defendant argues that this statement constituted an improper inducement to the defendant's admission. Phrased in the terms quoted above, however, such statements are permissible in the course of police questioning. "What is prohibited . . . is an *assurance*, express or implied, that [cooperation] will aid the defense or result in a lesser sentence" (emphasis added). *Commonwealth* v. *Meehan*, 377 Mass. 552, 564 (1979), and cases cited.

[10] "1. Have you, or any member of your family, been the victim of a crime of violence? 2. Have you or any member of your family ever been employed in the field of law enforcement or police work for any part of the government, whether state, local or federal?"

member of your family been employed in either a super-market, department store, or similar type establishment? 4. This alleged incident occurred at the Cumberland Farms Market, located at the corner of Park Street and Western Avenue in Lynn, Massachusetts. Have you ever been a customer at this market?" The defendant argues that it was error for the trial judge to refuse to ask these questions on voir dire. We disagree.

The defendant correctly points out that the right to exercise peremptory challenges, see Mass.R.Crim.P. 20(c), 378 Mass. 890 (1979), is "one of the most important of the rights secured to the accused," *Pointer* v. *United States*, 151 U.S. 396, 408 (1894); *Swain* v. *Alabama*, 380 U.S. 202, 219 (1965); *Commonwealth* v. *Soares*, 377 Mass. 461, 483 n.24, cert. denied, 444 U.S. 881 (1979), and that lack of adequate voir dire may impair the defendant's right to exercise peremptory challenges, *Rosales-Lopez* v. *United States*, 451 U.S. 182, 192-193 (1981), if he cannot otherwise obtain information about prospective jurors which "might furnish the basis for an intelligent exercise of peremptory challenges." See *United States* v. *Segal*, 534 F.2d 578, 581 (3d Cir. 1976); *United States* v. *Lewin*, 467 F.2d 1132, 1137-1138 (7th Cir. 1972); *United States* v. *Baldwin*, 607 F.2d 1295, 1297-1298 (9th Cir. 1979). See also *Commonwealth* v. *Allen*, 379 Mass. 564, 576 (1980).

It is well established, however, that "the decisions whether to allow questions other than those required by G. L. c. 234, § 28 . . . and whether to allow questions by counsel are within the discretion of the trial judge." *Commonwealth* v. *Ricard*, 355 Mass. 509, 510-511 (1969), and cases cited; *Commonwealth* v. *Chretien*, 383 Mass. 123, 134 (1981), and cases cited. Also the trial judge generally does not abuse his discretion in declining to pose questions not aimed at revealing "racial bias or any similarly indurated and pervasive prejudice." *Commonwealth* v. *Bailey*, 370 Mass. 388, 399 (1976). *Commonwealth* v. *Rhoades*, 379 Mass. 810, 821 (1980). *Commonwealth* v. *Estremera*, 383 Mass. 382, 387-388 (1981).

Applying these principles, we find no abuse of discretion. By the first proposed question, the defendant sought to inquire, in essence, whether a prospective juror had ever worked for any retail business, no matter what the circumstances. By the second question, the defendant sought to inquire whether a juror had ever shopped in the store which was robbed, no matter when or how often. It cannot be assumed that these experiences would generate such a powerful identification with the victims here as to constitute an indurated and pervasive prejudice. *Id* at 387. Moreover, we are unable to distinguish the influence of such experience from that which might be created by "a host of other possible similar prejudices." *Commonwealth* v. *Harrison,* 368 Mass. 366, 372 (1975), quoting from *Ham* v. *South Carolina,* 409 U.S. 524, 528 (1973). Since the questions requested by the defendant did not clearly deal with critical areas of potential prejudice, no abuse of discretion was committed by their exclusion. See, e.g., *Commonwealth* v. *Bailey, supra* at 399-400; *Commonwealth* v. *Estremera, supra* at 386-389.

*Judgments affirmed.*