COMMONWEALTH vs. TIMOTHY HENRY.

No. 93-P-969.

Norfolk. April 14, 1994. - October 7, 1994.

Present: WARNER, C.J., DREBEN, & JACOBS, JJ.

*Evidence*, Consciousness of guilt, Verbal completeness, Hearsay. *Practice, Criminal*, Instructions to jury, Lesser included offense. *Rape.*

At a criminal trial the judge correctly excluded certain hearsay testimony that the defendant had stated he was "not guilty of anything," where the excluded statement was merely self-serving, and not properly admissible under the rule of verbal completeness, as rehabilitative evidence, or under any other exception to the rule against hearsay. [431-434]

No substantial risk of a miscarriage of justice was created by the judge's instructions to the jury on consciousness of guilt, which did not state verbatim the language of *Commonwealth* v. *Toney*, 385 Mass. 575, 585 (1982) [434-437], but which, considering the instructions as a whole, adequately provided the jury with the substance of *Toney* regarding consciousness of guilt evidence [437-439].

Evidence at the trial of an indictment for aggravated rape warranted the judge's instruction to the jury, requested by the prosecution, on the lesser included offense of rape. [439-441]

INDICTMENT found and returned in the Superior Court Department on April 15, 1992.

The case was tried before *Judith A. Cowin*, J.

*Patricia A. O'Neill*, Committee for Public Counsel Services (*Larry R. Tipton*, Committee for Public Counsel Services, with her) for the defendant.

*John P. Corbett*, Assistant District Attorney, for the Commonwealth.

WARNER, C.J. After a jury trial on indictments charging him with aggravated rape and assault and battery with a dangerous weapon, the defendant was convicted of so much of the aggravated rape indictment that charged "simple" rape. The defendant and the victim shared the third floor of

a family residence and rooming house in Brookline. Of the four bedrooms available to tenants on the third floor, only two were occupied, one by the defendant and one by the victim. Although the defendant and the victim did not develop a personal relationship in their close quarters, the defendant contended that he and the victim had become friendly on the evening of August 28, 1991, had shared some food and drinks, and had consensual sex on the morning of August 29, 1991. The victim alleged that the defendant raped her, wielding a small knife or blade.

The evidence of aggravated rape presented at trial was as follows: on August 29, 1991, at approximately 6 A.M., the defendant confronted the victim as she prepared her breakfast. While undressed, he approached her from behind and placed his hand on her thigh. She ran down a stairway to the bottom of the first flight of steps, screaming for help. The owner-landlord of the residence was not at home, and no one responded to the victim's screams. The defendant grabbed her by the shirt and pulled her back up the stairs. The victim pushed the defendant's arms away from her but could not escape his hold. She felt a sharp blade on her left ring finger. Afraid and realizing she was alone in the house with him, the victim stopped struggling and asked him to put down the knife. Although she never saw a knife, she heard something fall to the ground. The defendant told her to stop screaming and go back upstairs.

When the defendant and the victim returned to the third floor, they entered one of the vacant rooms. The victim lay on the bed and slipped off her underwear but left her shirt on. The defendant knelt across her chest, held her head and had oral and vaginal intercourse with her.

The victim dressed, ate her breakfast and spent the day at her cashier's job. On her way to work, she called a friend from a pay phone and told him she had been "attacked" by a man in her rooming house. After work, she contacted the police who took her in a police cruiser to the Brookline residence. When the victim and the police officers entered the home, the defendant was gone, though his television was on

and all of his belongings (including his wallet) were in his room. Later that evening, the police took the victim to Brigham and Women's Hospital for evaluation and treatment. The next morning, the victim found in one of the third-floor bedrooms an open window that led to a fire escape. The defendant never returned to the residence.

1. *The Exclusion of Defendant's Statements Bearing on the Issue of Consciousness of Guilt.*

The defendant's mother, Jeanne Howard, testified that she had a conversation with him about the allegations against him within two days of his encounter with the victim. At the time of her conversation with the defendant, the police had told Howard that the defendant was being charged with rape. The defendant — already aware that the police were looking for him — was staying with his sister in the Dorchester section of Boston. In relating this conversation to the jury, Howard gave hearsay testimony that the defendant had stated he was "not guilty of anything," which the trial judge ruled inadmissible and ordered struck.[1] The defendant contends that the exclusion of that testimony impeded his right to "explain away inferences of consciousness of guilt" with rebuttal evidence.

The defendant's theory of rebuttal was that "as a black man unjustly accused of rape by a white woman, he was afraid to turn himself in." The trial judge admitted How-

---

[1]During defense counsel's direct examination, the Commonwealth moved to strike Jeanne Howard's testimony that the defendant said, after having learned that the police were looking for him, that "[h]e was afraid and he was not guilty of anything." The trial judge admitted the statement that the defendant was afraid but struck the statement that he was not guilty of anything. Defense counsel further explored the reasons the defendant gave his mother for his fear: "because it was a white female and he was black"; and because "he was afraid what . . . the police might do to him . . . if he turned himself in."

Near the end of the direct examination of Jeanne Howard, defense counsel asked Howard about the defendant's response to advice she offered him in the early months of 1992. Howard paraphrased the defendant as stating, "[t]hat he was still afraid to go in . . . he wasn't guilty of anything." The Commonwealth moved to strike, and the trial judge allowed the motion without specifying if all or part of Howard's testimony would be struck.

ard's testimony that the defendant knew the police were looking for him, knew the allegations against him, and was afraid because the woman was white and he was black. The defendant argues that without the qualifying statement that he was "not guilty of anything," the statement that he was afraid suggested that he was afraid because he was guilty. The jury could also have interpreted the defendant's statement to his mother to mean that he was innocent but afraid to face allegations against him. To the extent that the judge's ruling resulted in any suggestion of consciousness of guilt, it did not implicate our "limited" rule of verbal completeness. See *Commonwealth* v. *Watson*, 377 Mass. 814, 826-834 (1979)(where remainder of an utterance concerns same subject and explains first part, whole utterance may be admitted in interests of completeness). Applying the rule of completeness here would extend that rule to an "illogical conclusion," *id.* at 833, by bringing in an exculpatory statement that does more than give an explanation of why the defendant was afraid. In the interests of "completeness," a defendant cannot introduce "any amount of self-serving statements . . . admissible at his own option" along with a statement regarding his state of mind. *Ibid.*[2]

"If a defendant is charged with a crime and unequivocally denies it, and this is the whole conversation, that denial is not admissible in evidence." *Commonwealth* v. *Nawn*, 394 Mass. 1, 4 (1985). See *Commonwealth* v. *Trefethen*, 157 Mass. 180, 197 (1892). See also *Commonwealth* v. *Cantor*, 253 Mass. 509, 512-513 (1925); *Commonwealth* v. *Pleasant*, 366 Mass. 100, 102-103 (1974); *Commonwealth* v. *Hosey*, 5 Mass. App. Ct. 138, 141 (1977); *Commonwealth* v. *Rogers*, 8 Mass. App. Ct. 469, 474 (1979). Unless it is admissible under a different theory, a criminal defendant's denial of an

---

[2]As the Commonwealth pointed out at oral argument, the jury may not have been misled in this case because they heard the statements that the defendant said he was not guilty before they were struck from the record. We presume, however, that the jury understood and followed the judge's instruction to disregard the defendant's statement. See *Commonwealth* v. *Tuitt*, 393 Mass. 801, 809 (1985).

accusation should be excluded as hearsay. *Commonwealth v. Hosey, supra.*

The defendant argues that the excluded statements could be classified as rehabilitative testimony.[3] First, the defendant argues that he should have had the opportunity for a pre-emptive rehabilitation; i.e., introducing a prior consistent statement of the defendant (through his mother) before he testified. Cf. *Commonwealth v. Saarela,* 376 Mass. 720, 722-723 (1978)(where "claim of recent contrivance was unavoid-able," admitting prior consistent statement before claim arose was not prejudicial error). Further, the defendant ar-gues that he should have had an opportunity to rebut the inference of fabrication of the defendant's story by recalling Howard after the defendant testified. Out-of-court state-ments that are consistent with a witness's testimony "are generally not admissible to bolster his testimony." Liacos, Massachusetts Evidence 328 (6th ed. 1994). The doctrine of rehabilitative testimony allows defense counsel to recall a witness (or to introduce prior consistent statements by other means) only if there is a suggestion of "recent contrivance." See *Commonwealth v. Zukoski,* 370 Mass. 23, 26-28 (1976); *Commonwealth v. Andrews,* 403 Mass. 441, 455 (1988); *Commonwealth v. Brookins,* 416 Mass. 97, 102-103 (1993). In the prosecutor's cross-examination of Henry, there was no suggestion that his testimony regarding consensual sex with the victim was a "recent contrivance." Thus, the judge's de-termination that she saw "absolutely no permissible theory under which [Howard] could even arguably be recalled" was correct.

In the context in which they were presented — out of court statements offered by the defendant for the truth of the matter asserted — the defendant's statements denying his guilt are hearsay, not subject to any exception. See Liacos,

---

[3]In *Commonwealth v. Ruffen,* 399 Mass. 811, 813-814 (1987), on which the defendant relies for support, the court stated that "the curative admis-sibility doctrine allows a party harmed by incompetent evidence to rebut that evidence only if the original evidence created significant prejudice." Without a showing that some evidence presented was incompetent, the de-fendant's reliance on this doctrine is misguided.

Massachusetts Evidence, *supra*, 436. The statements of denial were properly struck and there was no error in the judge's refusal to allow Howard's recall.

2. *The Judge's Instructions to the Jury on Consciousness of Guilt.*

Referring to the evidence of the defendant's consciousness of guilt, the trial judge charged the jury as follows:

> "Now you also heard some testimony in this case regarding what is the Commonwealth's claim that the defendant fled his room shortly after the events in this case, and that he left his belongings at Aspinwal Avenue and avoided the police. The defendant has presented contrary evidence as to that point and to the circumstances of his leaving his room, and his whereabouts during the following year, and his intent in that regard. This evidence has been referred to by both parties as evidence that can be considered, or could be called 'consciousness of guilt' evidence. Relative to that type of evidence, you must remember that the most essential rule is that you can never convict anybody on evidence of consciousness of guilt standing alone. That is, you can never convict anybody on simply that evidence. Secondly, you may use that evidence and consider that evidence along with all the other evidence in this case in reaching your verdict. Even if you were to determine that there were acts by the defendant in leaving Aspinwal Avenue at the point that the Commonwealth claims, and leaving his belongings there, and if you were to determine that those actions do demonstrate feelings of guilt, that does not in fact mean that the defendant is guilty. Because feelings of guilt are often present in innocent persons."

Because these instructions do not track the exact language set out in *Commonwealth* v. *Toney*, 385 Mass. 575, 585 (1982), the defendant argues that the trial judge erred. As is conceded in the defendant's brief, because defense counsel

did not object adequately at trial to the omission of language now cited as error, the applicable standard of review is whether there is a substantial risk of a miscarriage of justice. *Commonwealth* v. *Batchelder*, 407 Mass. 752, 759 (1990).

*Commonwealth* v. *Toney*, 385 Mass. at 585, states that a judge should instruct a jury

> "(1) that they are not to convict a defendant on the basis of evidence of flight or concealment alone (see, e.g., *Commonwealth* v. *Smith*, 368 Mass. 126, 129 [1975]), and (2) that they may, but need not, consider such evidence as one of the factors tending to prove the guilt of the defendant."

The defendant did not request a verbatim *Toney* charge in his written requests before trial or at the bench conference immediately following the jury charge.[4] See *Commonwealth* v. *Hooks*, 375 Mass. 284, 290 (1978)(defendant is responsible for requesting appropriate charge, giving specific suggestions, if charge given is inadequate); *Commonwealth* v. *Thompson*, 23 Mass. App. Ct. 114, 116 (1986)("[i]nherent in the right to present written requests for instructions and to

---

[4]The defense request for a consciousness of guilt instruction included the following:

> "In considering whether evidence that the defendant demonstrated a consciousness of guilt on his part, you are to bear in mind these instructions: First, you may not convict the defendant on the basis of evidence of consciousness of guilt alone. Second, you may, but need not consider such evidence as a factor tending to prove that the defendant is guilty. Third, you are instructed that such conduct does not necessarily reflect feelings of guilt, since there are numerous reasons why an innocent person might act this way. Fourth, even if a person's conduct does demonstrate feelings of guilt it does not necessarily mean that the person is in fact guilty, because feelings of guilt are sometimes present in innocent people. *Commonwealth* v. *Toney*, 385 Mass. 575, 585-586 and n.6 (1982)."

Although defense counsel complained at the charge conference and at side bar of the trial judge's refusal to give a "specific charge on consciousness of guilt," he did not specify what language was problematic and did not suggest alternative language to give the trial judge an opportunity to rectify the alleged error. See *Commonwealth* v. *McDuffee*, 379 Mass. 353, 357 (1979); Mass.R.Crim.P. 24(b), 378 Mass. 895 (1979).

rulings thereon . . . is the duty to bring the requests clearly to the judge's attention"). Nevertheless, the defendant argues that the trial judge was required to recite the phrase "but need not" from the second prong of the *Toney* instruction in order to remind the jury that they were not *required* to conclude that the Commonwealth's evidence showed the defendant's consciousness of guilt. In essence, the defendant argues that, where evidence of consciousness of guilt is presented, a verbatim *Toney* instruction is mandatory. Alternatively, the defendant argues that the trial judge gave an instruction that inadequately conveyed the message of *Toney* that a jury is permitted to draw inferences of consciousness of guilt from the evidence presented, but that the jury is also free to disregard evidence that purports to show consciousness of guilt.

The *Toney* court advised that "[a] general instruction of the type outlined above will suffice" to apprise the jury of the role that consciousness of guilt evidence may play in drawing inferences. *Commonwealth* v. *Toney*, 385 Mass. at 585. While the defendant correctly observes that in note 6 of the opinion, at 585-586, the *Toney* court described its instructions as "required" instructions, the court did so only to distinguish between the basic consciousness of guilt instructions and supplementary instructions applicable when evidence of flight is presented.[5]

In *Commonwealth* v. *Cruz*, 416 Mass. 27, 30 (1993), the Supreme Judicial Court held that a judge's failure to give consciousness of guilt instructions, even where the defendant has not requested them, is error. "[I]n light of *Cruz*, [it may] be the better part of wisdom to give a consciousness of guilt instruction along the lines of the *Toney* formula as a matter of routine, unless the defense requests that a consciousness of guilt instruction not be given." *Commonwealth* v. *Pagan*, 35 Mass. App. Ct. 788, 793 (1994). In *Common-*

---

[5]Where evidence of flight is presented at trial, a judge may further caution the jury that "there are numerous reasons why an innocent person might flee, [so that] flight or similar conduct does not necessarily reflect feelings of guilt"; and "feelings of guilt are sometimes present in innocent people." *Commonwealth* v. *Toney*, 385 Mass. at 585-586 n.6.

*wealth* v. *Cruz, supra* at 30, however, the court did not require that "the *Toney* formula" be followed verbatim. While the *Cruz* court, *supra* at 30 (quoting from *Commonwealth* v. *Stewart*, 398 Mass. 535, 549 [1986]), referred to "the mandate of *Toney*" in reaching its decision, it did not disturb the line of cases holding that instructing on the "substance of what we required in *Toney*" is sufficient to apprise the jury how to interpret evidence of consciousness of guilt. *Ibid.*, quoting from *Commonwealth* v. *Nadworny*, 396 Mass. 342, 371 (1985), cert. denied, 477 U.S. 904 (1986). See, e.g., *Commonwealth* v. *Lawrence*, 404 Mass. 378, 396 (1989)("instructions regarding false statements and concealment as evidence of consciousness of guilt satisfied in substance, if not explicitly, both prongs of *Toney*"); *Commonwealth* v. *Paradise*, 405 Mass. 141, 157 (1989)(charge on consciousness of guilt "was correct in substance, and absent any specific requests to supplement it, the defendant cannot now argue a new theory on appeal"); *Commonwealth* v. *Lavalley*, 410 Mass. 641, 650-652 (1991)(instructions "practically identical to the language found in *Toney*" created no reversible error); *Commonwealth* v. *Knap*, 412 Mass. 712, 716 (1992)(instruction with language different from *Toney* declared "balanced and in accord with the principles enunciated in [*Toney*]"). Thus, to the extent that the defendant's argument relies upon the necessity for verbatim *Toney* instructions, it cannot prevail. The task remaining, then, is to determine whether the language that the trial judge used to explain consciousness of guilt adequately conveyed the substance of *Toney, supra* at 585.

After summarizing the Commonwealth's and the defendant's positions on the evidence presented as consciousness of guilt, the trial judge gave the substance of the "first prong" of *Toney*: "Relative to that type of evidence [of consciousness of guilt], you must remember that the most essential rule is that you never convict anybody on evidence of consciousness of guilt standing alone. That is, you can never convict anybody on simply that evidence." The "second prong" of *Toney*, which serves as the focus of the defendant's argu-

ment, was not given with language similar to that in *Toney* but captured the substance of the directive that the jury "may, but need not, consider such evidence as one of the factors tending to prove the guilt of the defendant." The defendant contends that the judge's omission of the "but need not" kept from the jury "the important caution that the jury *need not*, if they so chose, consider consciousness of guilt evidence at all." The language and context of the charge suggest otherwise. The trial judge did not simply omit the phrase "but need not" from her instructions; instead, she used a broader directive that the jury "may use that evidence and consider that evidence along with all the other evidence in this case *in reaching your verdict*" (emphasis supplied). The language complements the earlier general instruction by the trial judge regarding circumstantial evidence:

> "Circumstantial evidence requires that you, the jury, establish a connection between known facts and facts sought to be proved. In arriving at determinations of fact, you should draw on what are called inferences. That word sounds technical but it really is not. An inference is simply a logical, reasonable deduction when a material fact is not proven by direct testimony, that is, when a material fact is not proven by what someone actually saw, heard, or felt, but is left to be inferred from other facts or evidence. You may use your general knowledge and your common sense in determining what inferences are reasonably drawn from the evidence. Such inferences should be considered with all the other evidence in reaching your verdict."

The instructions provided the jury with the requisite cautions regarding consciousness of guilt evidence, complementing the trial judge's initial instructions that inferences must be drawn reasonably from underlying facts that have been found by the jury. See *Commonwealth* v. *Sellon*, 380 Mass. 220, 231-232 (1980)(instructions are to be interpreted in entirety, in light of "over-all impact" on jury). Viewed as a whole, the instructions gave the same message as the *To-*

*ney* court's reminder that a jury may, but need not, consider consciousness of guilt evidence as one of the factors tending to prove the guilt of the defendant.

3. *The Instruction on the Lesser Included Offense of Simple Rape.*

After the trial judge charged the jury on aggravated rape, the prosecutor asked for an additional instruction on the lesser included offense of rape. Although defense counsel initially agreed to this request, he ultimately objected to the giving of the instruction. "However, the 'test to determine if an instruction on a lesser included offense is required does not depend on whether there is an objection by the defendant or the Commonwealth but rather whether the evidence supports the giving of such instruction.' " *Commonwealth* v. *Thayer*, 418 Mass. 130, 133 (1994), quoting from *Commonwealth* v. *Vasquez*, 27 Mass. App. Ct. 655, 660 (1989), and cases cited.

A judge should not instruct the jury on a lesser included offense of the crime charged unless an element which distinguishes the lesser and the greater is sufficiently in dispute. See *Commonwealth* v. *Vasquez*, 27 Mass. App. Ct. at 660-661 (judge properly instructed that jury could convict on rape as lesser included offense of aggravated rape where presence of gun was disputed at trial). Compare *Commonwealth* v. *Egerton*, 396 Mass. 499, 503-504 (1986)(judge properly refused to instruct on indecent assault and battery as lesser included offense of rape where there was insufficient evidence on element differentiating greater and lesser offense). The lesser-included offense charge is required if "the evidence provides a rational basis for acquitting the defendant of the crime charged and convicting him of the lesser included offense." *Id.* at 503, quoting from *Commonwealth* v. *Santo*, 375 Mass. 299, 305 (1978).[6]

---

[6]Compare Model Penal Code § 1.07(5)(1985) which states, "[T]he court shall not be obligated to charge the jury with respect to an included offense unless there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense."

"In determining whether any view of the evidence would support a conviction on a lesser included offense, 'all reasonable inferences must be resolved in favor of the defendant.'" *Egerton, supra,* quoting from *Commonwealth* v. *Vanderpool,* 367 Mass. 743, 746 (1975). A "dispute" does not arise simply by failing to credit the Commonwealth's evidence. See *Egerton* at 505 (that jury was "free to disbelieve all, or any portion, of the victim's testimony" did not create sufficient dispute on element of intent to rape). But cf. *Commonwealth* v. *Thayer,* 418 Mass. at 133 (instruction on statutory rape justified "if the jury disbelieved the minor victims' testimony about threats" and assaults but "might still believe that the defendants had intercourse with the victims or abused them").

General Laws c. 265, § 22(*a*), as appearing in St. 1980, c. 459, § 6, defines aggravated rape as sexual intercourse, brought about by force ("against his will" or "by threat of bodily injury"), which is committed along with, among other possibilities, the offense defined in G. L. c. 265, § 15A, as assault and battery with a dangerous weapon.[7] Similar to *Commonwealth* v. *Vasquez,* 27 Mass. App. Ct. at 660-661, the inquiry in this case is whether the evidence of the assault and battery with a deadly weapon, a knife, was sufficient.

Defense counsel mentioned the knife at various times during the trial, questioning its existence and its use in raping the victim. Contrary to the assertions in the defendant's brief, the cross-examination of the victim aimed not only at eroding her credibility, but also at refuting the Commonwealth's assertions that a knife existed. On no less than four occasions, counsel repeated the same question, almost verbatim, "You didn't see the knife, did you?" Moreover, in ques-

---

[7]The aggravated rape statute also provides that the "aggravation" of a rape may occur when the offense of carrying a dangerous weapon, described in G. L. c. 269, § 10(*b*), is committed or attempted. Because the knives found in the defendant's bedroom were classified as "kitchen knife" and "folding type knife" or a Swiss Army knife, they may not fall within the category of "dangerous weapons" described in G. L. c. 269, § 10(*b*). In any event, the Commonwealth did not pursue this course as the means of proving the "aggravation" at trial.

tioning other witnesses, defense counsel confirmed that the victim did not mention seeing a blade when telling hospital personnel that she was raped; that there was no blood at or around the site of the lacerations on her hands which she claimed were caused by the defendant's knife; that those lacerations were "very small"; and that there were no blood traces on the knives found in the defendant's room. The jurors could believe the victim's testimony that she felt "something sharp" on her hand, without necessarily concluding that it was a knife and, thus, that the elements of aggravated rape were satisfied. Taken in a light favoring the defendant, there was sufficient evidence to place the existence of the knife (and the commission of an assault and battery with a deadly weapon) in dispute. See *Commonwealth* v. *Vasquez*, 27 Mass. App. Ct. at 661. Finding that the evidence was thin that the knife existed, the jury could rationally have found the defendant guilty of rape without the aggravating circumstance of an assault and battery with a deadly weapon.

*Judgment affirmed.*